UPON A REHEARING EN BANC
HALEY, Judge.
I. INTRODUCTION
Terrance Robert Henderson (“Henderson”) appealed the result of his probation revocation hearing and assigned as error that the trial court “violated [his] right of confrontation by admitting ... hearsay testimony.”
In an opinion published on June 21, 2011, a divided panel reversed the trial court. Henderson v. Commonwealth, 58 Va.App. 363, 710 S.E.2d 482 (2011). By order of July 26, 2011, this Court granted a petition for rehearing en bane and stayed *646 the mandate of the panel decision pending the decision of the Court en banc. Henderson v. Commonwealth, 58 Va.App. 616, 712 S.E.2d 52 (2011).
We conclude the trial court properly admitted the challenged hearsay evidence in conformity with the limited confrontation right in the Fourteenth Amendment. Accordingly, we vacate the panel opinion and affirm the trial court.
II. OVERVIEW
In Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599-00, 33 L.Ed.2d 484 (1972), the United States Supreme Court held that “the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.” Nonetheless, that Court continued, a defendant in a parole revocation hearing is entitled to those due process rights contained in the Fourteenth Amendment to the United States Constitution, including “the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).”[1] Id. at 489, 92 S.Ct. at 2604.
The Supreme Court applied the due process guarantees of Morrissey to probation revocation in Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761-62, 36 L.Ed.2d 656 (1973). Like parole, probation “arises after the end of the criminal prosecution, including imposition of sentence.” Morrissey, 408 U.S. at 480, 92 S.Ct. at 2600. In Scarpelli, the Supreme Court pointedly stressed that: “While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.” 411 U.S. at 782 n. 5, 93 S.Ct. at 1760 n. 5.
Following these decisions, this Court has developed its own jurisprudence, specifically addressing the hearsay issue.
*647 In Davis v. Commonwealth, 12 Va.App. 81, 84, 402 S.E.2d 684, 686 (1991), we wrote:
We first address Davis’ contention that White’s testimony was hearsay and improperly admitted at the probation revocation hearing. Both the United States Supreme Court and this Court have previously indicated probation revocation hearings are not a stage of criminal prosecution and therefore a probationer is not entitled to the same due process protections afforded a defendant in a criminal prosecution. See Gagnon v. Scarpelli, 411 U.S. 778, 782 [93 S.Ct. 1756, 1759-60, 36 L.Ed.2d 656] (1973); Morrissey v. Brewer, 408 U.S. 471, 480 [92 S.Ct. 2593, 2599-00, 33 L.Ed.2d 484] (1972); Atkins v. Commonwealth, 2 Va.App. 329, 331-32, 343 S.E.2d 385, 387 (1986). Specifically, the United States Supreme Court has stated that in revocation hearings “formal procedures and rules of evidence are not employed,” Scarpelli, 411 U.S. at 789 [93 S.Ct. at 1763], and that the process of revocation hearings “should be flexible enough to consider evidence ... that would not be admissible in an adversary criminal trial.” Morrissey, 408 U.S. at 489 [92 S.Ct. at 2604]. Thus, hearsay evidence, which would normally be inadmissible in a criminal trial, may be admitted into evidence in a revocation hearing based on the court’s discretion.
(Emphasis added).
After quoting Davis, we held in Hess v. Commonwealth, 17 Va.App. 738, 742, 441 S.E.2d 29, 32 (1994), that: “Consequently, a probation officer can, and frequently does, give hearsay evidence that includes a summary of a crime victim’s testimony from another trial or even an extra-judicial account concerning a probationer’s conduct.” (Emphasis added). See also Dickens v. Commonwealth, 52 Va.App. 412, 663 S.E.2d 548 (2008).[2]
*648 Succinctly stated, the due process right of confrontation contained in the Fourteenth Amendment is applicable in probation revocation hearings, but the scope of that right is not one congruent with that afforded by the Sixth Amendment in criminal trials.[3]
III. STANDARD OF REVIEW
We thus address whether good cause existed for the admissibility of the challenged hearsay and whether that admission violated Henderson’s Fourteenth Amendment due process right of confrontation.[4]
Whether Henderson’s “due process right of confrontation was violated is a question of law and is reviewed de novo.” Dickens, 52 Va.App. at 417, 663 S.E.2d at 550 (citing Michels v. Commonwealth, 47 Va.App. 461, 465, 624 S.E.2d 675, 678 (2006)). That said, the core issue before us is whether there was good cause, consistent with Morrissey, for admission of the challenged testimony. The question of good cause, and thus the propriety of that admission, is reviewed upon an abuse of discretion standard.
In Allen v. Commonwealth, 58 Va.App. 618, 622-23, 712 S.E.2d 748, 750 (2011), we wrote:
The underlying determinations of good cause ... involve a case-by-case exercise of the trial court’s discretion. See Dickerson v. Commonwealth, 29 Va.App. 252, 254, 511 S.E.2d 434, 435-36 (1999); Adkins v. Commonwealth, 24 Va.App. 159, 162-63, 480 S.E.2d 777, 779 (1997). On appeal, *649 we do not review these decisions de novo but rather under the deferential abuse-of-discretion standard. “Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.” Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting in parenthetical Thomas v. Commonwealth, 44 Va.App. 741, 753, 607 S.E.2d 738, 743 (2005)).
That standard of review is applicable to decisions of trial courts as to the admissibility of evidence. Avent v. Commonwealth, 279 Va. 175, 197, 688 S.E.2d 244, 256 (2010); Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997); Burton v. Commonwealth, 58 Va.App. 274, 280, 708 S.E.2d 444, 447 (2011); Lampkin v. Commonwealth, 57 Va.App. 726, 728, 706 S.E.2d 51, 52 (2011). And as we wrote in Joyce v. Commonwealth, 56 Va.App. 646, 663, 696 S.E.2d 237, 245 (2010): “Whether an adequate foundation has been laid for a hearsay exception involves an exercise of discretion by the trial court. See, e.g., Abney v. Commonwealth, 51 Va.App. 337, 347, 657 S.E.2d 796, 801 (2008).”
IV. TESTS FOR DETERMINING HEARSAY ADMISSIBILITY
Courts have developed two tests for evaluating whether good cause exists for the admission of hearsay evidence in probation revocation hearings—the reliability test and the balancing test.
Under the reliability test, a court “allows the admission of hearsay evidence without a showing of cause for the declarant’s absence if the evidence is sufficiently reliable.” Curtis v. Chester, 626 F.3d 540, 545 (10th Cir.2010). Reliable evidence under this test has also been described as evidence having “substantial guarantees of trustworthiness.” Egerstaffer v. Israel, 726 F.2d 1231, 1234 (7th Cir.1984). “The [Supreme] Court established the good cause showing in Morrissey to limit the substantive use of unreliable evidence at revocation hearings. However, if the proffered evidence itself bears substantial guarantees of trustworthiness, then the need to *650 show good cause vanishes.” Id. Another court explained that substantial trustworthiness in hearsay evidence represents good cause for not producing live testimony. Reyes v. State, 868 N.E.2d 438, 441-42 (Ind.2007). “In other words, if reliable hearsay is presented, the good cause requirement is satisfied.” Commonwealth v. Negron, 441 Mass. 685, 808 N.E.2d 294, 300 (2004).
Courts have considered a number of factors in determining whether hearsay evidence is reliable. Courts are often concerned with whether other evidence corroborates the hearsay. United States v. Rondeau, 430 F.3d 44, 48 (1st Cir.2005); United States v. Martin, 382 F.3d 840, 846 (8th Cir.2004); Egerstaffer, 726 F.2d at 1235. Another indication of reliability is that the evidence is “quite detailed,” providing “a fairly full account of the circumstances.” Crawford v. Jackson, 323 F.3d 123, 130 (D.C.Cir.2003); see also United States v. Chin, 224 F.3d 121, 124 (2d Cir.2000); Egerstaffer, 726 F.2d at 1235. Also relevant are admissions from the defendant corroborating the challenged hearsay, the failure of the defendant to present evidence, and internal corroboration within the hearsay. Crawford, 323 F.3d at 130. Statements possess less reliability when they come from an adversarial relationship between the person reporting the statement and the person who made it, United States v. Bell, 785 F.2d 640, 644 (8th Cir.1986), when they represent “self-serving statements,” Farrish v. Miss. State Parole Bd., 836 F.2d 969, 978 (5th Cir.1988), or when they contain multiple levels of hearsay, United States v. Lloyd, 566 F.3d 341, 345 (3d Cir.2009).
Under the balancing test, a court weighs a defendant’s “interest in confronting a particular witness against the government’s good cause for denying it, particularly focusing on the indicia of reliability of a given hearsay statement.” United States v. McCormick, 54 F.3d 214, 221 (5th Cir.1995); see also United States v. Williams, 443 F.3d 35, 45 (2d Cir.2006). Reliability constitutes “a principal factor” in this analysis. Lloyd, 566 F.3d at 345.
*651 “Whether a particular reason is sufficient cause to outweigh the right to confrontation will depend on the strength of the reason in relation to the significance of the releasee’s right.” United States v. Comito, 177 F.3d 1166, 1172 (9th Cir.1999). Although occasionally a defendant’s “interest in confrontation may be overwhelmed by the hearsay’s reliability such that the Government need not show cause for a declarant’s absence,” typically a defendant “may have a legitimate interest in confrontation and cross-examination even when a declarant’s out-of-court statement bears some indicia of reliability, and [trial] courts should normally address both factors.” Lloyd, 566 F.3d at 345. “Courts have recognized that a declarant’s refusal to testify or threats made against a declarant may be good cause for his absence and justify the admission of hearsay.” Id. at 346. Where it is clear that a witness is unavailable, a court applying the balancing test should simply determine whether the evidence is reliable. United States v. Farmer, 567 F.3d 343, 347 (8th Cir.2009).
While it is arguable that Virginia has adopted the reliability test, see, e.g., Turner v. Commonwealth, 278 Va. 739, 742, 685 S.E.2d 665, 667 (2009); Dickens, 52 Va.App. at 423, 663 S.E.2d at 553, both cases dealt with documentary evidence and not, as here, with testimony.
We decline to determine whether either test, or both tests, or other methods of analysis are mandatory in evaluating good cause for the admission of hearsay in probation revocation hearings. With that caveat, and because the parties here have only addressed the reliability test and the balancing test for determining good cause, the scope of our opinion will be likewise limited to the application of those tests to the instant facts. We hold that under either test, the challenged testimony was admissible.
V. BACKGROUND
In 2001, Henderson was convicted of a robbery that occurred in 2000 in violation of Code § 18.2-58. In addition to an active period of incarceration, he received a substantial sus *652 pended sentence, along with supervised probation upon release. Henderson was released from incarceration in September 2009 and placed on supervised probation.
On February 26, 2010, Henderson appeared in court on allegations of probation violation. The Commonwealth called only one witness, Detective Rosa Ortiz of the Arlington County Police Department, who testified regarding two incidents concerning Henderson. Over Henderson’s objection, much of the evidence Ortiz offered involved hearsay.
The first incident concerned an attempted robbery occurring on October 2, 2009. Ortiz spoke with the victim and his daughter on October 6. Other officers had already conducted a preliminary investigation.
The victim reported he received a phone call from an unknown number. The caller pretended to be from the sheriffs office and asked him to go to the courthouse to sign legal documents regarding a family member. When the victim delayed in leaving, he received a second call. He eventually left and was approached by a man who requested a cigarette. As the man passed by, he attempted to steal a bag held by the victim. The victim resisted and managed to thwart the robbery.
The victim returned home and reported the incident to the police. When his daughter returned home, she attempted to save the phone number in her own phone; however, her phone identified the number as belonging to Henderson. The daughter contacted Henderson, who agreed to meet with the victim and his daughter. Henderson told them “he lends his phone to a lot of people and he [did not] remember who he loaned it to that day.” Ortiz contacted Henderson, who told her “basically the same thing.” The victim told Ortiz “he really didn’t want to file charges because people knew his daughter, and they all were in the neighborhood, they live in the same neighborhood, they knew where he lived.” Henderson was not charged in connection with this incident.
On October 8, Ortiz “received a phone call at night at my house to come in to investigate a home invasion robbery.” *653 When she arrived at the police station, she interviewed the victim, who reported three individuals participated in a robbery at his house. The trio knocked on the door, but the victim declined to answer when he looked through a window and learned their identities. Nonetheless, they entered the home through an unlocked front door. The first person to enter had a gun in his waistband. Henderson was the second person and was followed by another man. The group stole property from the residence. The robbery occurred around 11:00 p.m. The victim identified Henderson by name and picked out his photo from a lineup. The victim had previously met Henderson at a probation office. The victim had several prior larceny convictions and had agreed to plead guilty to grand larceny.
Henderson spoke with Ortiz after being arrested for this crime. Regarding the prior attempted robbery incident, Henderson stated during this interview “that his phone was stolen and miraculously it appeared on his porch two days later.” He told her “that the people in the neighborhood simply didn’t like him, and that’s why his name came up on these two different cases.” When Ortiz inquired why people would not like him, Henderson responded that “they just don’t.” Henderson mentioned the second victim “as the victim of a home invasion, and being one of the people that don’t like him just because he had an issue with his brother.” Henderson related that on the day of the incident he was on his porch talking to others between 8:00 p.m. and midnight.
During the home invasion investigation, the police obtained a search warrant for Henderson’s house. Henderson’s stepfather told the police that Henderson “was not there the day of the incident ... that they had been having a lot of problems with him listening ... to what he needs to do, and that he stays out all night.”
Henderson admitted to Ortiz that he knew the other two perpetrators of the home invasion robbery and that he had been in a car with them. When police searched the car, they discovered property of the victim.
*654 Ortiz later monitored phone calls of Henderson and the other two perpetrators of the home invasion made from the jail. The gunman told Henderson’s brother “to take [the victim’s] stuff out of your house.” The gunman made “a lot of threats towards the victim.” The gunman eventually arranged to return the victim’s property by way of two other people. Henderson stated the home invasion victim “pulled a knife on Martin” and “should go to jail.” At another point, the gunman stated: “[T]hey got me and they got Terrence. And he asked how did they get Martin.”
The home invasion victim ultimately refused to testify about the incident. Ortiz testified: “I actually personally met with him and his mother, and they were extremely scared of retaliation. My victim’s mother ... the day before the court she heard gunshots around the house, and that really scared her.” The charge was nolle prosequied.
Henderson presented the testimony of his mother. She stated that when she arrived home at 10:20 p.m. the night of the home invasion robbery, Henderson was in his room and did not leave the house that night.
The trial court found Henderson in violation of his probation and sentenced him to serve the entirety of the suspended sentence from the 2001 robbery conviction. Henderson appealed to this Court, arguing the trial court violated his confrontation rights under the Due Process Clause of the Fourteenth Amendment by admitting hearsay. A panel majority reversed the trial court, and we granted the Commonwealth’s petition for rehearing en banc.
VI. APPLICATION
Initially, we note the limited scope of the hearsay Henderson challenges. Henderson challenges the admissibility of Ortiz’s testimony regarding the statements of the victim of the attempted robbery and his daughter, as well as the statements of the victim of the home invasion robbery. He does not dispute the admissibility of any other hearsay relayed by Ortiz.
*655 A. Reliability Test
Before we analyze the facts of this case under the reliability standard, we find it useful to consider how other courts have applied the reliability standard under similar facts. The Court shall then discuss how the hearsay concerning each incident possesses substantial indicia of reliability.
In Crawford, 323 F.3d at 124, the court affirmed a parole revocation based solely on a police investigative report. A woman’s complaint led to Crawford’s arrest for aggravated assault. Id. At a parole revocation hearing, a single police report of the incident (also relating drug use by Crawford) was admitted and parole was revoked based on it. Id. at 124-25. On appeal, Crawford raised similar arguments as in this case, challenging the “exclusive reliance on the police investigative report ... inasmuch as it is unsworn, prepared months after relevant events, and apparently consisted not of the author’s personal observations or conversations with the complainant but instead was a summary of an affidavit prepared by another police officer.” Id. at 127. Crawford also noted that the assault charge was never prosecuted and his arrest record was expunged. Id. at 127-28.
In spite of the minimal amount of evidence and the fact that Crawford was never prosecuted, the court found the police report sufficiently reliable to revoke parole. Enunciating the reliability standard, the court stated that hearsay evidence could be relied upon where it possessed “sufficient indicia of reliability under the circumstances at hand to protect the prisoner’s due process rights.” Id. at 129. First, the court noted the report was “quite detailed, an indicia of reliability.” Id. at 130. Second, the court found important that Crawford did not dispute a large portion of the relevant facts. Id. Third, the court stated the report contained internal corroboration because it included information from sources other than the complainant. Id. A responding officer observed evidence inconsistent with Crawford’s story, and Crawford’s “farfetched explanation” gave “reasonable cause for the Board to doubt his denial of culpability.” Id. Fourth, Crawford failed to *656 present any evidence contesting his guilt. Id. Finally, claimed multiple levels of hearsay were not significant under the facts of the case. Id. at 130-31.
Another case demonstrating application of the reliability standard is United States v. Kelley, 446 F.3d 688 (7th Cir.2006). There an officer responded to a report about a person with a gun. Id. at 689. The victims told the officer Kelley had punched them and displayed a rifle he retrieved from the trunk of his car. Id. at 690. The officer observed that one of the victims had a broken tooth. Id. Later, the officer searched Kelley’s vehicle and discovered a rifle. Id. Although the officer lacked personal knowledge of the incident related by the victims, he testified about their account at a revocation hearing and the court found Kelley in violation of his supervised release. Id. On appeal, Kelley argued the trial court erred in admitting the victims’ hearsay statements. Id. at 692. Applying the reliability standard, the court affirmed, holding the victims’ hearsay “bore substantial indicia of reliability” since “[t]he physical evidence and the officer’s personal observations and investigation corroborated the [victims’] accusations.” Id.

Attempted Robbery Incident

The first way the evidence concerning this incident possesses reliability is that it contains a detailed account given to Detective Ortiz. Lloyd, 566 F.3d at 345; Crawford, 323 F.3d at 130; Egerstaffer, 726 F.2d at 1235. Ortiz spoke to both the victim and his daughter. The victim related how he received a phone call from an unfamiliar number. The caller pretended to be from the sheriffs office and requested the victim to go to the office to sign documents about a family member. When the victim did not immediately exit, the caller phoned him again. Upon the victim leaving, a man approached the victim and asked for a cigarette. The man then attempted to take a bag from the victim, but was unsuccessful as the victim resisted. The victim reported the incident to the police. When his daughter requested to see the telephone number of the person who had called, she realized it was the *657 phone number for Henderson. The victim and his daughter spoke with Henderson, who told them “he lends his phone to a lot of people” and he did not “remember who he loaned it to that day.”
Second, Henderson’s story corroborated what the victim and his daughter reported. Crawford, 323 F.3d at 130; United States v. McCollum, 677 F.2d 1024, 1026 (4th Cir.1982). Detective Ortiz spoke with Henderson about this incident, and Henderson related “basically the same thing” as he had told the victim and his daughter. During another interview, Henderson stated “that his phone was stolen and miraculously it appeared on his porch two days later.” While these statements do not corroborate the remainder of the story of the victim and his daughter, “[n]ot every detail ... need be corroborated to establish the reliability.” Cf. Farmer, 567 F.3d at 348.
Third, Henderson’s statements gave ample cause to doubt his credibility and believe his culpability. Crawford, 323 F.3d at 130; see also Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004) (“A false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge.”). Henderson recounted different stories regarding his involvement. He told the victim and Ortiz he had loaned his phone on the day in question, but did not remember who borrowed it. At another time, Henderson told Ortiz someone had stolen his phone, but it incredibly “appeared on his porch two days later.” The inconsistencies in Henderson’s accounts and especially his story about his magically disappearing/reappearing phone provided “reasonable cause ... to doubt his denial of culpability.” Crawford, 323 F.3d at 130.
Fourth, Henderson failed to present any evidence to contradict the Commonwealth’s evidence at this revocation hearing. Id. (finding important that “despite the obvious incentive to present supporting evidence, [the defendant] did not call any witness or present evidence other than his own- testimony to support his version of events”); United States v. Waters, 158 *658 F.3d 933, 941 (6th Cir.1998) (finding relevant that while the defendant argued his inability to cross-examine a hearsay declarant prevented the defendant from establishing his brother participated in illegal conduct, the defendant “presented no evidence suggesting that his brother rather than he initiated contact”); see also United States v. Minnitt, 617 F.3d 327, 334 (5th Cir.2010) (noting in finding reliability that the defendant “failed to offer any evidence”). Henderson knew the identities of the victim and his daughter. Crawford, 323 F.3d at 130. He knew of the allegations since Ortiz contacted him. Yet he failed to present any contrary evidence at the revocation hearing. Rather, Henderson admitted another person could have used his phone to attempt the robbery.
Fifth, it is notable that Ortiz spoke with the victim and his daughter soon after the incident. Only four days passed between the attempted robbery and the interview with Ortiz. The brevity of this period enhances reliability. See Page v. Clopton, 71 Va. (30 Gratt.) 415, 430 (1878) (holding that after a period of five days “the facts were no doubt firmly impressed on his mind and fresh in his recollection”); see also People v. Androvett, 135 A.D.2d 640, 522 N.Y.S.2d 218, 220-21 (1987) (“The lineup was conducted within four days of the crime while the witness’s memory was still fresh....”); Jackson v. State, 338 So.2d 231, 232 (Fla.Dist.Ct.App.1976) (“In view of the fact that the victim herein observed her assailant ... only nine days later while her memory was still fresh, there is little room for doubt that the identification of the defendant was correct.”). Moreover, the victim and his daughter had already reported the incident to police officers before speaking with Ortiz. Their quick report supports reliability. Cf. Herron v. Commonwealth, 208 Va. 326, 330, 157 S.E.2d 195, 198 (1967).
Sixth, a large portion of the victims’ statements did not concern Henderson. That the victims limited their statements concerning Henderson tends to enhance their credibility since it shows they did not deliberately structure their statements to implicate Henderson. Cf. Monroy v. City of Los Angeles, 164 Cal.App.4th 248, 78 Cal.Rptr.3d 738, 753 (2008) (stating *659 that “credibility may be enhanced when a defense expert agrees with a plaintiffs expert”).
Finally, the victim and his daughter would be subject to criminal liability if they made a false report to the police. Code § 18.2-461. This increases their reliability. See Beckner v. Commonwealth, 15 Va.App. 533, 535, 425 S.E.2d 530, 532 (1993).

Home Invasion Robbery

Regarding the second incident, the victim told Ortiz that several men came to his door at night and knocked on the door, but the victim did not open it because he saw who was there. The men entered the door, which was unlocked, and stole property. The first person to enter possessed a gun in his waistband. The victim identified Henderson as the second person to enter.
Unlike the first incident, the story related here is not detailed. Rather, it is simply a statement that several people knocked on the victim’s door, entered without permission, and took property. It is true that a lack of detail diminishes reliability. Furthermore, the victim had several prior larceny convictions and had agreed to plead guilty to grand larceny, which again makes his story less reliable.
That said, other evidence presented significantly corroborated the victim’s account to make the story reliable. See Rondeau, 430 F.3d at 48; see also United States v. Pratt, 52 F.3d 671, 675 (7th Cir.1995).
First, Henderson and an accomplice made incriminating statements about Henderson’s involvement. During a police interview, Henderson admitted he knew the other perpetrators of the robbery. He also admitted he had been in a car with them. A search of the car from a warrant discovered property belonging to the victim. During a monitored telephone conversation, the gunman from the robbery said “they got me and they got [Henderson].”
Second, other monitored telephone calls plainly established the fact that the robbery occurred. It was learned that some *660 of the victim’s property was in the house of Henderson’s brother. The gunman instructed the brother to remove the property. The gunman made numerous threats towards the victim. The gunman eventually arranged to return the stolen property to the victim. Although this evidence does not necessarily indicate Henderson’s involvement, it proves another fact crucial to the case: the existence of a robbery involving the victim.
Third, the monitored telephone conversations provided evidence of a motive. At one point, Henderson stated the victim “pulled a knife on Martin” and the victim “should go to jail.” In another conversation, the gunman, immediately after stating “they got me and they got [Henderson]” for the robbery, “asked how did they get Martin.” Thus, it may be inferred that Martin was the third participant in the robbery, that Henderson shared Martin’s unfavorable relationship with the victim, and that Henderson acted upon these sentiments by participating in the robbery. The robbery may have been in retaliation for the victim pulling a knife on Martin, or an act of aggression against someone the perpetrators did not like.
Fourth, Henderson provided evasive explanations to Ortiz and the court could make an incriminating inference from this. Crawford, 323 F.3d at 130; Covil, 268 Va. at 696, 604 S.E.2d at 82. Henderson first told Ortiz “that the people in the neighborhood simply didn’t like him, and that’s why his name came up on these two different cases.” When Ortiz inquired further about why people did not like him, Henderson stated “they just don’t.” Henderson then mentioned the victim of the home invasion as “being one of the people that don’t like him just because he had an issue with his brother.” The trial court could infer a desire to conceal the truth from Henderson’s implausible claim that he was identified as a robber simply because of a general dislike for him in the community. Moreover, by Henderson specifically mentioning the robbery victim as a person who disliked him, the trial court could infer Henderson’s involvement in the robbery and a desire to discredit the victim.
*661 Fifth, the court could again make an incriminating inference from Henderson’s statements regarding his whereabouts the night of the robbery. Henderson told Ortiz that on the night of the incident, he was on his porch talking with others between 8:00 p.m. and midnight. Yet at the hearing, Henderson presented the testimony of his mother, who stated that when she arrived home at 10:20 p.m., Henderson was in his room and did not leave the house that night. Furthermore, when police searched Henderson’s house, they were told that Henderson “was not there the day of the incident.” The court could choose to believe that Henderson and his mother were seeking to conceal his guilt and regard this as additional proof of culpability.
Sixth, it is notable that the victim reported the robbery soon after it was alleged to have occurred. Ortiz testified she was called “at night at my house to come in to investigate a home invasion robbery.” This tends to support reliability. Cf. Herron, 208 Va. at 330, 157 S.E.2d at 198.
Seventh, the victim would have been subject to criminal liability for filing a false report. Code § 18.2-461. This increases a complainant’s reliability by attaching a penalty to misleading police. See Beckner, 15 Va.App. at 535, 425 S.E.2d at 532.
Taken together, the evidence revealed a reliable account of a robbery involving Henderson. While the victim’s story standing alone would not support a reliability finding, the other evidence, including statements by Henderson, provided a reliable history.
B. Balancing Test

Attempted Robbery Incident

In considering whether the government had shown adequate reasons for not producing the victims of this incident to testify, persuasive are Henderson’s admissions corroborating the victims’ accounts and the fear of retribution for testifying.
*662 In Bell, 785 F.2d at 644, the court held admission of police reports proper without the officers’ presence where the defendant partially corroborated the reports. The police reports detailed an occasion where police arrested Bell for driving while intoxicated, possessing marijuana, and possessing narcotic paraphernalia. Id. at 642. Bell admitted “that he was driving on a public highway in the middle of the night without his lights on, and that he had been drinking.” Id. at 644. While acknowledging that drinking does not establish intoxication, the court found this corroboration sufficient to justify admitting the police reports without confrontation. Id. The court held that in light of “all of these reports and ... the force of Bell’s own concessions, we are morally certain that no substantial purpose would have been served by requiring the officers’ personal presence.” Id. The court continued by stating that the officers “would simply have repeated what is in the reports, and none of the contentions made by Bell at his revocation hearing indicates that he would have been able to shake their account in any substantial way.” Id. This was also in spite of the fact that Bell apparently made no admissions concerning his arrest for drugs. Id.
In United States v. Jones, 299 F.3d 103 (2d Cir.2002), the court held it proper to consider fear or risk of retaliation under circumstances relevant to this case. Jones was on supervised release after having been convicted of participating in a racketeering enterprise. Id. at 105. Through hearsay testimony of an officer, the government presented evidence that Jones had been standing in the doorway of an apartment building while masturbating and making sexual remarks to a fifteen-year-old girl. Id. at 107. The hearsay declarants were the wife of the officer and the young girl. Id. The girl told the officer “she was scared” from the incident. Id. After Jones was arrested that day, he told the officer “it’s not over. Okay. I’ll get you.” Id. In assessing whether the government presented sufficient reasons for denying confrontation, the court found “with regard to both eyewitnesses, Jones’s history of violent conduct made reprisal against them a possibility.” Id. at 113.
*663 With respect to the attempted robbery incident, Henderson’s admissions alone justified the admission of hearsay. The only part of the hearsay concerning Henderson was the use of his phone to set up the attempted robbery, which he admitted was possible. Although this does not corroborate the remainder of the account, it is a significant piece of evidence. Furthermore, it is unclear how Henderson would impeach the hearsay declarants or how any changes in the victims’ account would affect Henderson since only his phone was involved. Under Bell, the corroboration provided is adequate.
Yet Henderson’s corroborating statements did not represent the only basis for admission, for the potential threat to the victim and his daughter also provided a ground to excuse their presence. Ortiz testified that the victim “explained to me he really didn’t want to file charges because people knew his daughter, and they all were in the neighborhood, they live in the same neighborhood, they knew where he lived.” Obviously, the victim was afraid of retaliation if charges went forward. Like the defendant in Jones, Henderson had a history of violent conduct, i.e., the robbery he committed in 2000 and the home invasion robbery from this case. This represented substantial ground to believe retaliation was possible. Moreover, the victim’s daughter was familiar with Henderson. Henderson’s involvement was discovered because the daughter recognized his phone number. She knew Henderson by his first name and had him come to her residence to discuss the incident. As such, it is likely she was familiar with Henderson’s personality and his propensity for violence. This gives additional weight to the victim’s fear.
For the reasons already discussed above, the hearsay was clearly reliable. Thus, the hearsay at issue meets the requirements of the balancing test.

Home Invasion Robbery

Under facts and arguments extremely similar to this incident, the court in Martin held the hearsay was admissible. The court held:
*664 In the present case, Martin argues that the government has failed to adequately explain its failure to present Garcia’s live testimony. Martin points out that, although Sperando did testify regarding Garcia’s refusal to testify against Martin in state court, those state court proceedings occurred more than a year before the revocation hearing and yet, since those state court proceedings, the government had made no attempt to interview or subpoena Garcia. Moreover, Martin contends, there has been no showing that Garcia’s alleged reason for refusing to testify (i.e., her fear of retaliation by a “crime family”) is well-founded. Consequently, Martin argues, the government has failed to show that the burden of producing Garcia’s live testimony is inordinate.
* * * * *
In the present case, the government did offer an explanation for why the burden of producing Garcia as a live witness would be inordinate. The government presented evidence that Garcia repeatedly stated that she would not testify against Martin and that, when Garcia was subpoenaed to testify against Martin in state court, she appeared in court but refused to testify. The government believed that Garcia likewise would not testify against Martin at his supervised release revocation hearing and that serving her with a subpoena would be futile. The government also demonstrated that the hearsay evidence was reliable....
[W]e hold that the government met its burden to show good cause for not producing Garcia as a live witness at the revocation hearing.
382 F.3d at 845-46 (citation omitted).
Like Martin, the Commonwealth plainly demonstrated here that the victim refused to testify from fear of retaliation. The following dialogue occurred during the hearing:
[Prosecutor]: Would it be fair to say ultimately, Detective Ortiz, that the victim ... refused to come to court and to testify to the circumstances of the home invasion?
*665 [Ortiz]: Yes. I actually personally met with him and his mother, and they were extremely scared of retaliation. My victim’s mother ... she basically said she—the day before the court she heard gunshots around the house, and that really scared her.
A charge was filed against Henderson in connection with the robbery, but was nolle prosequied when the victim refused to testify. Such fear was justified, for Ortiz testified that in monitored phone conversations the gunman made “a lot of threats towards the victim.”
Based on this evidence, the Commonwealth showed the victim refused to testify from fear of Henderson or his accomplices. Considering that in a previous proceeding the Commonwealth was forced to nolle prosequi a charge because of the victim’s refusal to testify, there is no reason to believe a different result would occur at a revocation hearing. Id. at 846. As such, the only inquiry was whether the evidence was reliable. Farmer, 567 F.3d at 347. For the reasons detailed above, it was reliable.[5]
*668 VII. CONCLUSION
In review of this probation revocation hearing, we hold the trial court did not abuse its discretion in admitting the challenged hearsay testimony, there being good cause for its admission. The admission did not violate Henderson’s Fourteenth Amendment due process right of confrontation. The judgment of the trial court is affirmed.

Affirmed.

. At oral argument, Henderson's counsel agreed that Morrissey remains good law.

. To review decisions from other jurisdictions, see Annotation, Admissibility of Hearsay Evidence in Probation Revocation Hearings, 11 A.L.R.4th 999 (1982 & Supp.2011).

. We note that Henderson did not in the trial court, before the panel, or before the Court en banc, maintain any violation of his Sixth Amendment rights, or assert such a right was applicable to revocation hearings. At oral argument, Henderson’s counsel agreed the Sixth Amendment does not apply.

. We note that Henderson has not preserved for appeal the issue of whether a trial court is required to enunciate on the record a finding of ‘‘good cause,” or the reasoning leading to such a finding. See Morrissey, 408 U.S. at 489, 92 S.Ct. at 2604 (holding a defendant is entitled to confrontation "unless the hearing officer specifically finds good cause”). Accordingly, we do not address such an issue.

. We address the dissent in this footnote.
Initially, we note the dissent assumes a premise unsupported by the record. That premise is that Henderson preserved for appeal the issue of whether a trial court is required to enunciate on the record a finding of "good cause” and/or the reasoning leading to such a finding. The issue of whether a trial court must explicitly find good cause on the record is separate from the issue of whether the trial court abused its discretion in finding good cause.
Preservation requires, quoting the relevant portion of then Rule 5A:18, that an objection be "stated together with the grounds therefor at the time of the ruling.” Those grounds " 'must be ... stated with specificity.’ ” Kovalaske v. Commonwealth, 56 Va.App. 224, 229, 692 S.E.2d 641, 645 (2010) (quoting McDuffie v. Commonwealth, 49 Va.App. 170, 177, 638 S.E.2d 139, 142 (2006)). Rule 5A:18 "‘required that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.’ ” Bazemore v. Commonwealth, 42 Va.App. 203, 218, 590 S.E.2d 602, 609 (2004) (en banc) (quoting Brown v. Commonwealth, 8 Va.App. 126, 131, 380 S.E.2d 8, 10 (1989)). We have recently emphasized these requirements of Rule 5A:18. See Dickerson v. Commonwealth, 58 Va.App. 351, 355-56, 709 S.E.2d 717, 719 (2011); Scott v. Commonwealth, 58 Va.App. 35, 44, 707 S.E.2d 17, 22 (2011).
*666 As we held in Andrews v. Creacey, 56 Va.App. 606, 635-36, 696 S.E.2d 218, 232 (2010), a general objection "by appellant was insufficient to alert the trial court that she was objecting to the court’s failure to [explicitly] consider the factors enumerated.” A general objection to purported inadmissible hearsay testimony, as here in issue, does not suffice.
To be sure, had the trial record contained any reference whatsoever as to an objection based upon the failure of the trial court to enunciate a finding of "good cause,” the dissent would have quoted the same. Given that absence, the dissent creates a startling proposition: because a trial judge is presumed to know the law, a trial judge may err when that judge fails to rule upon an issue never presented for consideration. In short, the dissent maintains that a trial judge must address grounds for an objection that could have been or might have been raised by a litigant. Such logic does not just ignore the strictures of Rule 5A:18; it eviscerates that Rule. Here, as we noted in footnote 4, the issue of enunciating “good cause” was never raised in the trial court.
Nor was that issue an assignment of error. The first sentence of this majority opinion recited the assignment of error. We here repeat it: "The trial court violated [his] right of confrontation by admitting ... hearsay testimony.”
Rule 5A:12(c)(1)(i) states in part: “Only assignments of error assigned in the petition for appeal will be noticed by this Court.” See also McLean v. Commonwealth, 30 Va.App. 322, 329, 516 S.E.2d 717, 720 (1999) (en banc). "The purpose of assignments of error is to point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, and to limit discussion to these points.” Harlow v. Commonwealth, 195 Va. 269, 271, 77 S.E.2d 851, 853 (1953) (emphasis added).
In reversing this Court, the Virginia Supreme Court agreed that "an appellate court may not ‘recast’ an argument made in a lower court into a different argument upon which to base its decision.” Clifford v. Commonwealth, 274 Va. 23, 25, 645 S.E.2d 295, 297 (2007); see also Commonwealth v. Brown, 279 Va. 235, 240, 687 S.E.2d 742, 745 (2010). And as is here pertinent we quote the following:
Our system of appellate review requires the litigants to place before the reviewing court the issues that are the subject of the appeal. It is not proper for an appellate court to intervene on behalf of a particular party and reframe an issue to help their cause; such action violates a basic premise that American courts act as neutral arbiters.
Moore v. Commonwealth, 276 Va. 747, 761, 668 S.E.2d 150, 158 (2008) (Lemons, J., dissenting).
The dissent assumes that the failure to enunciate good cause is assigned as error. It plainly was not. And by addressing that issue the dissent ignores Rule 5A:12(c)(1)(i) and the jurisprudence it has generated.
Moreover, Rule 5A:20(e) requires that an appellant’s opening brief contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error.” Assertions of error unsupported by authority “do not merit appellate consideration.” Buchanan v. Buchanan, 14 Va.App. 53, 56, 415 S.E.2d *667 237, 239 (1992); see also Reid v. Commonwealth, 57 Va.App. 42, 48, 698 S.E.2d 269, 271 (2010); Atkins v. Commonwealth, 57 Va.App. 2, 20, 698 S.E.2d 249, 258 (2010). As counsel conceded in oral argument, the issue of whether a trial court had a duty to make express findings on the record in support of a good cause determination was never raised in Henderson’s petition for appeal, in the opening brief before the three-judge panel, or in the opening brief en hanc. Thus, no authority addressing that issue has ever been presented to any court, as required by Rule 5A:20(e).
The dissent, in addressing the actual assignment of error, concludes the trial court erred “in failing to permit Henderson to confront and cross-examine the witness.” This assertion begs the question ("petito principii ”). It is the logical fallacy in which the proposition to be proven is assumed in the premise. As we wrote above, while we do review due process implications as a matter of law de novo, the core issue before us is not whether Henderson was denied confrontation; rather, the issue is whether there was good cause for the admission of the challenged evidence. As we have pointed out, the question of the existence of good cause, and thus the propriety of that admission, is reviewed upon an abuse of discretion standard. It is “[o ]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." Grattan, 278 Va. at 620, 685 S.E.2d at 644 (emphasis added) (citation omitted). The majority does not find such an abuse here occurred, and thus we differ from the dissent.
The dissent urges us to adopt the “balancing test” as the proper measure of good cause. We specifically chose not to adopt any specific test as that measure. We note that Federal Rule of Criminal Procedure 32.1(b)(2)(C), which codified the Morrissey “good cause” test, likewise makes no such choice. In revocation hearings, a respondent is granted ”[a]n opportunity to ... question any adverse witness unless the court determines that the interest of justice does not require the witness to appear.” Fed.R.Crim.P. 32.1(b)(2)(C). And, as have we, the federal appellate courts apply an abuse of discretion standard in their analysis. See, e.g., United States v. Black Bear, 542 F.3d 249, 255 (8th Cir.2008); United States v. Ray, 530 F.3d 666, 667-68 (8th Cir.2008); Williams, 443 F.3d at 46.
Again in its conclusion, the dissent maintains that because Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), has "altered the Sixth Amendment Confrontation Clause landscape” in criminal trials, we should apply the principles therein enumerated to revocation hearings. But the dissent earlier acknowledged that "the Sixth Amendment is not at issue in this case.” And, as we pointed out in our footnote 3, Henderson has never asserted any Sixth Amendment right and at oral argument en banc counsel agreed the Sixth Amendment does not apply.
The dissent maintains the trial court erred for a reason not presented to the trial court for consideration, not assigned as error, and unsupported on brief before this Court by any authority, that is, a failure to enunciate a finding of good cause. Accordingly, we see no need to address that argument. And for that same reason, as set forth in footnote 3, and noted above, we do not address the dissent’s assertion of a violation of the Sixth Amendment.
*668 Finally, while respecting the dissent's argument concerning the nonexistence of good cause, the majority, also reasonable jurists, differs, and finds that good cause did exist for admission of the challenged testimony.