UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Callins and Frucci
Argued at Lexington, Virginia


JUSTIN MEYERS HODGES

MEMORANDUM OPINION* BY
v.        Record No. 1215-24-3        JUDGE STEVEN C. FRUCCI
AUGUST 5, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

Daniel P. Galyon, Senior Trial Attorney (Public Defender's Office,
on briefs), for appellant.

Melanie D. Edge, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


In 2007, the Circuit Court of Henry County convicted Justin Meyers Hodges of

carjacking in violation of Code § 18.2-58.1 and sentenced him to eight years of incarceration

with five years suspended and three years of supervised probation.  He violated his probation six

times from December 2014 through August 2023, including a new conviction for grand larceny.

In May 2024, Hodges's probation officer filed another major violation report.  The circuit court

held a seventh probation revocation hearing and revoked Hodges's suspended sentences and

reimposed the remainder of his sentences for carjacking and grand larceny to be served as active

incarceration in their entirety.  Hodges appeals.  For the following reasons, we affirm the circuit

court.

_____

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

On September 26, 2007, the circuit court convicted Hodges of carjacking in violation of

Code § 18.2-58.1 and, on December 12, 2007, sentenced him to eight years' incarceration, with

five years suspended.  Hodges was released from incarceration in October 2011.  In October

2014, he appeared before the circuit court for his first probation revocation hearing after he had

been charged with grand larceny of a firearm and felony possession and transportation of a

firearm.  The circuit court revoked Hodges's suspended sentence for carjacking, resuspending all

but one year and ten months.  Hodges was convicted on the grand larceny and firearm charges,

and in December 2014, the circuit court sentenced him to 17 years' incarceration, with 13 years

suspended.

Hodges was again released from incarceration in February 2019.  That same month he

tested positive for marijuana and was charged with grand larceny and obtaining money by false

pretenses.  By July 2019, Hodges had ceased contact with his probation officer and was no

longer living at the address on file with the probation office.  In August 2019, he was arrested for

violating a protective order.  Hodges's probation officer filed a major violation report, citing the

foregoing issues.  On November 6, 2019, Hodges appeared before the circuit court for his second

revocation hearing.  The circuit court revoked his suspended sentence for carjacking and

resuspended all but six months.

Hodges's probation officer filed another major violation report in November 2021

alleging that he had missed multiple meetings, tested positive for marijuana, and changed his

---

[1] On an appeal of a probation revocation, "we will view the evidence received at the revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable legitimate inferences that may be properly drawn from it." *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013).  The circuit court's "findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion." *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)).

addresses without informing his probation officer. His third revocation hearing occurred in February 2022, where the circuit court found Hodges in violation, revoked his suspended sentence for carjacking, and resuspended all but 14 days.

On June 21, 2022, Hodges's probation officer filed another major violation report, alleging that he had changed his residence and absconded from supervision. His fourth revocation hearing was held in August 2022. At which, the circuit court revoked Hodges's suspended sentences and resuspended all but 5 months and 16 days.

On May 3, 2023, Hodges appeared for a fifth revocation hearing after testing positive for methamphetamine and fentanyl. The circuit court found that Hodges had violated his probation and revoked his suspended sentences, resuspending all but three months.

In June 2023, the probation officer filed a major violation report addendum alleging that Hodges had failed to report to his probation officer, and on August 16, 2023, Hodges appeared for his sixth probation revocation hearing. The circuit court revoked Hodges's suspended sentences and resuspended all but one year.

Hodges again was released from incarceration in March 2024. On May 6, 2024, his probation officer filed a major violation report alleging that he missed two meetings with his probation officer, missed three scheduled urine tests, and tested positive for methamphetamine, fentanyl, norfentanyl, and hydroxyalprazolam. Hodges appeared for his seventh probation violation revocation hearing on June 26, 2024. The Commonwealth offered the major violation report as evidence of his violation. Hodges objected to the admission of the report as inadmissible hearsay and argued that admitting the report would violate his right to confront and cross-examine the probation officer who authored the report. In response, the Commonwealth stated that Joe Clark, "the probation officer who prepared th[e] violation report and supervised" Hodges during this period of probation, was present in the courtroom and offered to call him

"and he c[ould] testify to everything" that was in the report, which in the Commonwealth's view, "would alleviate [Hodges's] concern in this particular instance." Addressing Hodges's counsel, the circuit court stated that "we have a probation violation report authored by Probation Officer Joe Clark, who is present in the courtroom," which "is offered by the Commonwealth as an exhibit, as evidence in this case, and you object to that . . . ? Is that where we stand?" Hodges's counsel replied, "Yes." The circuit court then asked, "your objection is based on the fact that you don't have the opportunity to confront Mr. Clark?" "Yes, Judge," counsel replied, "if it's just coming in as this document, I don't have any chance to cross examine the author of the document." The circuit court overruled Hodge's objection. "He's sitting right here," the court observed, so "[y]ou have the opportunity to cross examine him . . . [i]f you'd like to call him, you are welcome to."

When asked whether "there [was] evidence the defense would like to present," Hodges then called his mother, Mrs. Debra Hodges, as the sole defense witness. Mrs. Hodges testified about Hodges living with her and her husband during the current term of probation, his rejection from a resident treatment program because of his use of Suboxone that had been prescribed while he was in jail, and her expectations of him while residing in her home.[2] She testified that she "tried to remind him . . . of certain things that he needed to do," including "call[ing] [his] PO" during "the times that he couldn't get there." She provided Hodges's transportation to his meetings with his probation officer "when [she] could," and testified that she "would try to call the P.O. office" when Hodges did not have transportation to his meetings, to which they would respond, "well he can walk; he can walk." Mrs. Hodges acknowledged her son's lack of

---

[2] "Suboxone is commonly used to treat opiate addictions." *Artis v. Commonwealth*, No. 1020-14-1, slip op. at 2 n.1, 2015 Va. App. LEXIS 183 at *2 n.1 (June 2, 2015) (Unpublished opinions may be cited as informative. *See* Rule 5A:1(f)). *See also United States v. Arevalo-Contreras*, 601 F.Supp.3d 974, 984 n.3 (D.N.M. 2022) ("Suboxone strips are prescribed, sublingual strips used to treat opioid addictions.").

diligence about keeping appointments with his probation officer. "[H]e thinks [']I checked in; it'll be okay; I'll go tomorrow,'" she testified, attributing this lack of conscientiousness to a lack of understanding. "I mean when he misses an appointment," she explained, "he knows well I've missed an appointment with Mr. Clark, but he doesn't understand the realm of it." Asked about her son failing a drug test in April 2024, Mrs. Hodges replied that she did not know "what happened there," but that she "did not see no red flags in [her] home." On cross-examination, Mrs. Hodges acknowledged that at a previous probation revocation hearing, the circuit court had warned her son that "he was being given one more chance to do right, then he would be given significant time if he had another violation."

Upon the completion of Mrs. Hodges's testimony, the circuit court asked whether Hodges had any additional evidence to present. When counsel replied in the negative, the circuit court inquired further, asking "[t]he defense does not care to call Officer Clark to the stand? Is that correct?" When Hodges declined with a simple "[n]o, Judge," the court pressed again, pointing out that "[Clark] is available." To this, Hodges replied that "it's the Commonwealth alleging that he violated his probation. They have the burden to show that that happened. We don't have to call someone to the stand to meet their burden of complying with the Constitution."

Upon conclusion of the parties' arguments, the circuit court found Hodges in violation of his probation and revoked his entire suspended sentences, requiring him to serve the remaining "thirteen years and nine months" of his sentences as active incarceration. "[P]robation is not for everybody," the circuit court informed Hodges, "and it's not for you." "This is your seventh probation violation," the court explained, before recapitulating Hodges's various probation violations. "The first time you were a positive drug screen," the circuit court told Hodges; "the second time it included changing your address and not letting [the probation officer] know where you were; the third time you absconded; the fourth time you absconded again; the fifth time you

- 5 -

had positive urine screens." Hodges then "absconded again" and failed to comply with the requirements of his probation, the circuit court noted. "Probation is not for you," the circuit court concluded, and therefore "impose[d] all of [his] time and released [him] from probation." Hodges appeals.

ANALYSIS

On appeal, Hodges assigns error to the circuit court's acceptance of hearsay evidence in the form of the major violation report in lieu of testimony from Hodges's probation officer, which he characterizes as a violation of his rights under the Confrontation Clause. He also asserts that the circuit court abused its discretion by imposing the remainder of his outstanding sentences—13 years and 9 months of active incarceration. We address each in turn.

I. Hearsay

Hodges objects to the circuit court's receipt of the major violation report into evidence in lieu of live testimony, characterizing it as inadmissible hearsay.

"Both the United States Supreme Court and [the Virginia Supreme] Court have previously indicated probation revocation hearings are not a stage of criminal prosecution and therefore a probationer is not entitled to the same due process protections afforded a defendant in a criminal prosecution." *Hess v. Commonwealth*, 17 Va. App. 738, 742 (1994) (alteration in original) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 84 (1991)). *See also Atkins v. Commonwealth*, 2 Va. App. 329, 331 (1986) (same).

"Specifically, the United States Supreme Court has stated that in revocation hearings 'formal procedures and rules of evidence are not employed,' and that the process of revocation hearings 'should be flexible enough to consider evidence . . . *that would not be admissible in an adversary criminal trial.*'" *Davis*, 12 Va. App. at 84 (alteration in original) (emphasis added) (first quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 789 (1973); and then quoting *Morrissey v. Brewer*, 408

U.S. 471, 489 (1972)). Because revocation of probation is a continuation of the original sentence, "it follows that evidence of a defendant's prior criminal convictions is also relevant and admissible in revocation proceedings." *Pearson v. Commonwealth*, 37 Va. App. 583, 590 (2002). Furthermore, the standard of review in a probation revocation hearing is not proof beyond a reasonable doubt; rather, the "court may revoke the suspension for any cause the court deems sufficient that occurred within the maximum period for which the defendant might originally have been sentenced to be imprisoned." *Lee v. Commonwealth*, 71 Va. App. 205, 209 (2019) (quoting Code § 19.2-306(A)).[3] "[T]he ultimate burden of proof for a probation violation . . . remains with the Commonwealth, the party seeking judgment." *Cox v. Commonwealth*, 65 Va. App. 506, 520 n.3 (2015) (citing *United Dentists, Inc. v. Commonwealth*, 162 Va. 347, 355 (1934) ("[H]e has the burden of proof who seeks to move the court to act in his favor." (alteration in original)); *Good v. Dyer*, 137 Va. 114, 131 (1923) ("The party who maintains the affirmative of an issue carries the burden of proof through the whole case.")).

It is well-settled that "hearsay evidence, which would normally be inadmissible in a criminal trial, may be admitted into evidence in a revocation hearing based on the court's discretion," provided that it is sufficiently reliable. *Dickens v. Commonwealth*, 52 Va. App. 412, 421 (2008) (citing *Morrissey*, 408 U.S. at 489). *Cf. Turner v. Commonwealth*, 278 Va. 739, 742-43 (2009) (holding that "[p]olygraph test results fall far short of the 'demonstrably reliable' hearsay evidence that may be admitted" in a probation revocation hearing even "under th[e] 'relaxed' standards" applicable in such proceedings).

"Courts have developed two tests for evaluating whether good cause exists for the admission of hearsay evidence in probation revocation hearings—the reliability test and the balancing test." *Henderson v. Commonwealth*, 59 Va. App. 641, 649 (2012) (en banc), *aff'd*, 285 Va. 318 (2013).

---

[3] Subject to the provisions of Code § 19.2-306.1, discussed below.

"Under the balancing test, a court weighs a defendant's 'interest in confronting a particular witness against the government's good cause for denying it, particularly focusing on the indicia of reliability of a given hearsay statement.'" *Id.* at 650 (quoting *United States v. McCormick*, 54 F.3d 214, 221 (5th Cir. 1995)). "[T]he reliability test," by contrast, "allows the admission of hearsay evidence without a showing of cause for the declarant's absence if the evidence is sufficiently reliable." *Id.* at 649 (quoting *Curtis v. Chester*, 626 F.3d 540, 545 (10th Cir. 2010)). The balancing test is inapplicable here, because (1) the declarant—Officer Clark—was not absent, (2) the prosecution did not deny Hodges the opportunity to confront Officer Clark, and (3) the circuit court offered Hodges the opportunity to examine him multiple times. Because "the court may apply either test, as may be most appropriate in the circumstances," we will turn, then, to the reliability test. *Henderson*, 285 Va. at 328.

"Reliable evidence . . . has . . . been described as evidence having 'substantial guarantees of trustworthiness.'" *Henderson*, 59 Va. App. at 649 (quoting *Egerstaffer v. Israel*, 726 F.2d 1231, 1234 (7th Cir. 1984)). "Courts have considered a number of factors in determining whether hearsay evidence is reliable." *Id.* at 650. These include, but are not limited to, the presence of "other evidence corroborat[ing] the hearsay," *id.* (citing *Egerstaffer*, 726 F.2d at 1235), and "the failure of the defendant to present evidence," *id.* (citing *Crawford v. Jackson*, 323 F.3d 123, 130 (D.C. Cir. 2003)). Courts have also found "evidence of substantial similarities between past offenses and the new accusations that bolsters the accuser's credibility" to be a useful indicium of reliability. *Henderson*, 285 Va. at 327 (citing *Curtis*, 626 F.3d at 547).

Here, the major violation report evinced sufficient indicia of reliability to justify its receipt into evidence without the testimony of the declarant. First and foremost, the misconduct described in the major violation report admitted into evidence is consistent with the misconduct described in Hodges's previous major violation reports. The report states that Hodges missed meetings with this

- 8 -

probation officer twice in April 2024, missed a urine screen at end of that month, and then missed two appointments to make up the missed screen, and it also stated that when Hodges did report for a urine screen, he tested positive for methamphetamine, fentanyl, norfentanyl, and hydroxyalprazolam. The major violation report shows that Hodges had misbehaved this way repeatedly over several years. His probation was revoked in late 2014 for, among other things, failing to provide urine screens as directed and testing positive for unlawful controlled substances. It was revoked again in 2019 when Hodges tested positive for cocaine and marijuana, changed his address without authorization, and failed to notify his probation officer of the change. Hodges appeared for revocation hearings twice in 2022, for failing to report for meetings, changing his address without informing his probation officer, and absconding from supervision. Hodges also appeared at revocation hearings twice in 2023, for testing positive for methamphetamine and fentanyl, failing to report to probation, failing to provide a current address to his probation officer, and absconding from supervision. The current misconduct that Officer Clark reported in the present major violation report is consistent with Hodges's longstanding pattern of behavior, thus bolstering the report's reliability.

Hodges's failure to produce any contradictory evidence also weighs in favor of the reliability of the report. *Henderson*, 285 Va. at 327 (listing "a probationer's failure to offer contradictory evidence" as a guarantee of trustworthiness). Although Hodges called his mother as a witness, her testimony bolstered the report's reliability rather than diminishing it, by showing that Hodges was lackadaisical about his obligations as a probationer. And his refusal to call Officer Clark, despite the circuit court's multiple invitations to do so, is particularly telling. "[D]espite the obvious incentive to present supporting evidence," Hodges not only failed to "call any witness or present evidence other than his [mother's] testimony to support his version of events," *Henderson*, 59 Va. App. at 657, but he repeatedly rebuffed the circuit court's invitation to call Officer Clark for

cross-examination on the contents of the report. The circuit court could reasonably have inferred from this refusal that Hodges knew or believed that Officer Clark would have corroborated the contents of the report and taken this as a further indicator of the report's reliability.

For all of these reasons, we find that the major violation report had sufficient indicia of reliability such that the circuit court did not abuse its discretion in admitting it.

## II. The Sentence

In his second assignment of error, Hodges asserts that "[t]he trial court abused its discretion in imposing 13 years and 9 months of active incarceration for a technical probation violation." We find no abuse of discretion.

Code § 19.2-306(C) provides that "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." It further provides that "[t]he court may again suspend all or any part of this sentence for a period up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned, less any time already served." *Id.* Code § 19.2-306.1(C) states that a circuit court may not impose "a term of active incarceration upon a first technical violation of the terms and conditions of a suspended sentence or probation," and that it "may impose not more than 14 days of active incarceration for a second technical violation," and that only if the defendant "cannot be safely diverted from active incarceration through less restrictive means." But the statute further provides that "[t]he court may impose whatever sentence might have been originally imposed for a third or subsequent technical violation." *Id.* The record shows that Hodges has committed

more than two technical violations, so that under the statute, the circuit court was authorized to impose *any portion* of Hodges's suspended sentence, or all of it.[4]

Sentencing "decisions—if within the lawful boundaries of applicable sentencing statutes and constitutional limitations—are vested in the sound discretion of trial judges, not appellate judges." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016) (citing John L. Costello, *Virginia Criminal Law and Procedure* § 63.3[5], at 1113 (4th ed. 2008)). "In an indeterminate sentencing model 'not subject to established criteria, except for the statutory framework that set its outer limits,' an appellate court simply has no principled 'standards it could invoke to determine whether a particular sentence was excessive in length or otherwise inappropriate.'" *Id.* (quoting 6 Wayne R. LaFave et al., *Criminal Procedure* § 26.3(g), at 945 (4th ed. 2015)). "The same can be said for the constituent aspects of the trial court's sentencing decisions, such as those regarding the suspension of active sentences and the imposition of a term of probation." *Id.* "A Virginia trial court 'clearly' acts within the scope of its sentencing authority 'when it chooses a point within the permitted statutory range' at which to fix punishment." *Id.* at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771 (2007)). Therefore, "once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Id.* at 565 (quoting *Dorszynski v. United States*, 418 U.S. 424, 431 (1974)).

"Probation or suspension of sentence 'comes as an act of grace to one convicted of a crime,'" and "cannot be demanded as a right." *Berman v. United States*, 302 U.S. 211, 213 (1937)

---

[4] Code § 18.2-58.1(A) provides, "Any person who commits carjacking, as herein defined, shall be guilty of a felony punishable by imprisonment for life or a term not less than fifteen years." Code § 18.2-95(iii) provides that any person who "commits simple larceny not from the person of another of any firearm, regardless of the firearm's value, shall be guilty of grand larceny, punishable by imprisonment in a state correctional facility for not less than one nor more than 20 years." Therefore, the circuit court's sentences were within the allowable statutory ranges—and the circuit court further did not err by revoking the previously suspended sentences and imposing the remaining 13 years and 9 months of the suspended sentences as active incarceration.

(quoting *Escoe v. Zerbst*, 295 U.S. 490, 492 (1935)).  As his mother acknowledged at the revocation hearing, the circuit court had expressly warned Hodges when awarding a suspended sentence at a previous revocation hearing that "he was being given one more chance to do right" and that "he would be given significant time if he had another violation."  Hodges failed to heed the circuit court's warning, and the circuit court kept its word, imposing the remainder of his sentences to be served as active incarceration.  The circuit court was within its statutory authority when it imposed the remainder of Hodges's suspended sentences for carjacking and grand larceny, and "[i]t is well-established that '[i]f a sentence imposed is within the statutory limits fixed by the legislature, the assumption is that the sentence will not be disturbed on appeal.'"  *Cellucci v. Commonwealth*, 77 Va. App. 36, 48 (2023) (second alteration in original) (quoting *Bassett v. Commonwealth*, 13 Va. App. 580, 582 (1992)).

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*