PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Russell and Lacy, S.JJ.

TERRANCE ROBERT HENDERSON

OPINION BY
v.   Record No. 120512     SENIOR JUSTICE CHARLES S. RUSSELL
                                January 10, 2013
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal requires us to consider the limited right of a criminal defendant to confront his accusers in a probation revocation proceeding.

## Facts and Proceedings

In 2001, Terrance Robert Henderson was convicted in the Circuit Court of Arlington County of robbery and use of a firearm. He was sentenced to 25 years' imprisonment with 18 years and four months suspended. He was released from prison on probation in September 2009 and returned to Arlington to live with his mother. Less than a month after his release, he was arrested on a new robbery charge in Arlington. His probation officer reported to the court that Henderson had violated the terms of his probation, specifically the conditions that he would obey all laws and report any arrests. He requested that Henderson be brought before the court to show cause why his probation should not be revoked. The probation officer recommended that Henderson be required to serve the entire unserved balance of his original sentence.

On February 26, 2010, the court conducted a revocation hearing. The Commonwealth called as its sole witness Detective Rosa Ortiz of the Arlington County Police Department.[1] Henderson's counsel objected that her testimony would be inadmissible as hearsay and would also violate Henderson's right to confront the witnesses against him. The court overruled the objection.

The detective testified that she had been assigned to investigate an attempted robbery that had occurred on October 2, 2009. The victim told her that he had received a cellular telephone call from an unknown man who stated that he was calling from the Arlington County Sheriff's Department. The caller asked the victim to come to the courthouse to sign some legal documents with reference to a family member. When the victim failed to leave his apartment, he received a second call from the same caller. The victim then left his apartment and observed a man across the street who then crossed the street and asked the victim for a cigarette. The man then tried to seize a "man's purse" the victim was carrying, but the victim struggled with him and fought him off. The victim returned to his apartment and called the police.

---

[1] Henderson called his mother as a witness for the defense. The Commonwealth later made her its own witness for the purpose of exceeding the scope of cross-examination, but her evidence added nothing of substance to the Commonwealth's case.

Later, the detective testified, the victim's daughter came to his apartment and found that the calls the victim had received, ostensibly from the Sheriff's department, were recorded on her father's cellular telephone as having come from a telephone number of a person she knew as "Terrance." Terrance's number was saved in her own cellular telephone. He lived in the same neighborhood. The victim and his daughter later asked Henderson about the calls and he told them that he lends his telephone to a lot of people and didn't remember to whom he had lent it on that day. The detective later questioned Henderson about the use of his telephone and he told her the same story. The detective testified that the victim later told her that "he really didn't want to file charges because people knew his daughter . . . they live in the same neighborhood and they knew where he lived." Henderson was never prosecuted for this crime.

The detective also testified to a different crime, a "home invasion robbery" that occurred six days later. The victim of that crime came to the police station, and she interviewed him there. The victim told her that he heard a knock at his front door on October 8, 2009. He looked out and saw three men outside whom he knew. He didn't answer the knock, but he had forgotten to lock the door, so they opened it and entered his home. The first man to enter had a firearm in his waistband.

3

The second man was known to him as "Terrance." He and "Terrance" had met while both were sitting in the lobby of the probation office a short time earlier. The victim identified Henderson's photograph from an array as the man he knew as "Terrance," the second of the three who had entered his home on October 8 and stolen some of his property.

Henderson and his two co-defendants in the "home invasion robbery" were arrested on felony warrants. The detective testified that she had interviewed Henderson in the jail about both offenses. He denied participation in either crime. He said that his name was connected with both cases because people in the neighborhood didn't like him. With respect to the use of his telephone in the attempted robbery of October 2, this time he told the detective a different story, that "his phone [was] stolen and, miraculously, it appeared on his porch two days later."

Henderson admitted that he knew his two co-defendants and that he had been riding with them in a Lincoln automobile. Search warrants were obtained for Henderson's home and for the Lincoln. No evidence was found in the home, but property stolen in the home invasion robbery was found in the Lincoln.

The detective testified that she had monitored "about maybe 20" telephone calls made by Henderson and his two co-defendants from the jail after their arrests. The gunman in the home

4

invasion robbery was identified as a man named Jones.  He called Anthony, the brother of Terrance Henderson, telling Anthony to "take Danny's [the victim's] stuff out of your house."  The detective also testified that the monitored calls contained "a lot of threats towards the victim."  Jones called his girlfriend to ask her to get Henderson's brother Anthony to "talk to" the victim.  When Anthony refused, Jones called one Darius Price, who agreed to "talk to" the victim and persuade him to change his mind about prosecuting the case.  The calls later indicated that Price and the girlfriend had complied with Jones' instructions and that they had returned some of the victim's stolen property to him.

Another monitored call was from Henderson to his mother.  The detective testified that Henderson told his mother that the victim's mother was demanding a cash payment as the price of "dropping the charges."  Henderson's mother refused to make any such payment.  During this conversation, Henderson told his mother that during the robbery, "Danny pulled a knife on Martin, and Danny [the victim] should go to jail."  Martin was identified as the third robber.  In a monitored call made by Jones from the jail, Jones said: "[T]hey got me and they got Terrance. . . . [H]ow did they get Martin?"

The detective testified that when she went to interview the victim, he and his mother were "extremely scared of

5

retaliation."  The mother said that "the day before the [c]ourt [proceedings] she heard gunshots around the house, and that really scared her."  Ultimately, the victim refused to testify and the Commonwealth took a nolle prosequi in the home invasion robbery case.

Several times during the detective's testimony and again at the close of the evidence, defense counsel renewed her objection on hearsay and confrontation grounds, but the court overruled the objections and found that Henderson had violated the terms and conditions of his probation.  The court stated no reasons for its ruling.  The court revoked the probation and entered an order requiring Henderson to serve the remaining 18 years and four months of his original 2001 sentence.

Henderson appealed to the Court of Appeals, which granted him an appeal by a per curiam order.  The case was heard by a three-judge panel.  By a published opinion, Henderson v. Commonwealth, 58 Va. App. 363, 400, 710 S.E.2d 482, 500-01 (2011), the divided panel reversed the circuit court's judgment and remanded the case for a new revocation hearing.  The Court granted the Commonwealth a rehearing en banc.  The Court en banc, with ten judges sitting, six judges joining, two judges concurring in part, and two judges dissenting, vacated the panel decision and affirmed the judgment of the circuit court.  The en banc Court held that there was no error in the admission of the

6

hearsay testimony and that Henderson had not preserved his challenge to the failure of the trial court to state its reasons for admitting the hearsay evidence. Henderson v. Commonwealth, 59 Va. App. 641, 648 n.4, 668, 722 S.E.2d 275, 279 n.4, 289 (2012) (en banc). We awarded Henderson an appeal.

Analysis

Henderson assigns two errors to the Court of Appeals' judgment en banc: (1) that the judgment violated his constitutional right to confront his accusers and (2) that the judgment erroneously affirmed the circuit court's error in admitting evidence in violation of the rule against hearsay. When confrontation rights are asserted in a revocation proceeding, for reasons hereinafter stated, we consider the rule against hearsay to be entirely subsumed within the probationer's limited due process right of confrontation. Therefore, we will not consider Henderson's second assignment of error.

Henderson also argues on appeal that the circuit court had a duty to state for the record the specific "good cause" it found for denying his right to confront the witnesses against him. The Court of Appeals held that claim procedurally defaulted, not having been preserved for appeal. Henderson v. Commonwealth, 59 Va. App. 641, 648 n.4, 722 S.E.2d 275, 279 n.4 (2012) (en banc). Henderson contends that the Court of Appeals erred in so holding, but that ruling is not before us because it

7

was not made the subject of any assignment of error on appeal to this Court.  Rule 5:17(c)(1)(i).

Because parole revocation proceedings occur after a criminal prosecution has ended in a conviction, a parolee is not entitled to the "full panoply" of constitutional rights to which he was entitled at trial.  Morrissey v. Brewer 408 U.S. 471, 480 (1972).  Following Morrissey, in Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973), the Supreme Court of the United States held that the same constitutional principles applied in probation revocation hearings.  Although the Sixth Amendment right of confrontation applies only in criminal trials, a more limited right of confrontation was included in the Due Process Clause of the Fourteenth Amendment, applicable to parole and probation revocation proceedings.  The Supreme Court expressed the Fourteenth Amendment's "minimum requirements of due process" as providing:

> (a) written notice of the claimed violations of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation].

8

*Morrissey*, 408 U.S. at 489 (emphasis added).  The parenthetical exception within the confrontation right expressed in *Morrissey* is central to this appeal.

Hearsay is frequently admitted in revocation proceedings. See, e.g., id. (revocation proceedings allow consideration of letters, affidavits, and other material that would not be admissible in an adversary criminal trial); *United States v. Doswell*, 670 F.3d 526, 530 (4th Cir. 2012) ("Supervised release revocation hearings are informal proceedings in which the rules of evidence, including those pertaining to hearsay, need not be strictly applied").

Hearsay that is testimonial in nature, however, is subject to the limited confrontation right provided by the Fourteenth Amendment.  Such hearsay may be admitted only when "the hearing officer specifically finds good cause for not allowing confrontation."  *Morrissey*, 408 U.S. at 489.  In the present case, one may infer that the circuit court made such a finding of good cause simply from the fact that Henderson's objections on hearsay and confrontation grounds were overruled.  The record is silent, however, as to any ground upon which the court may have relied in finding good cause.  We think the Supreme Court's holding in *Morrissey* implies that the trial court, when dispensing with the due process right of confrontation, should state for the record the specific grounds upon which the court

9

has relied for "not allowing confrontation"[2] in order to facilitate effective appellate review of that decision.  Because the circuit court's failure to make such a statement has not been preserved for appeal in the present case, and because we have not previously articulated the requirement that such a statement be made, we will not reverse for its omission but will instead make an independent review of the record to ascertain whether there was sufficient credible evidence before that court to support a finding of "good cause for not allowing confrontation."

Many federal and state courts have considered the question of "good cause" in the context of Morrissey and Gagnon.  Two tests have emerged for determining whether the denial of the right to confrontation in that context will comport with constitutional due process.  The first, the "reliability test," permits admission of testimonial hearsay in revocation proceedings if it possesses substantial guarantees of

---

[2] Accord, e.g., United States v. Rondeau, 430 F.3d 44, 47–48 (1st Cir. 2005) (hearsay was admissible at revocation hearing only because the court determined explicitly why it was reliable, and found on the record that the government had a good reason not to produce declarants); Barnes v. Johnson, 184 F.3d 451, 454 (5th Cir. 1999) ("To fall within the good-cause exception to the right of confrontation at a parole revocation hearing[,] the hearing officer must make an explicit, specific finding of good cause and state the reasons for that finding. . . . The hearing officer must weigh the parolee's interest in confronting the witness with the government's interest in denying the parolee that right").

trustworthiness.  See Crawford v. Jackson, 323 F.3d 123, 130 (D.C. Cir. 2003).  Some guarantees include (1) detailed police reports (as opposed to mere summaries of such reports by probation officers), (2) affidavits or other hearsay given under oath, (3) statements by the probationer that directly or circumstantially corroborate the accusations, (4) corroboration of accusers' hearsay by third parties or physical evidence, (5) statements that fall within a well-established exception to the hearsay rule, (6) evidence of substantial similarities between past offenses and the new accusations that bolsters the accuser's credibility, and (7) a probationer's failure to offer contradictory evidence.  Id.; United States v. Jones, 299 F.3d 103, 113 (2d Cir. 2002); United States v. Kelley, 446 F.3d 688, 692 (7th Cir. 2006); United States v. Lloyd, 566 F.3d 341, 345 (3d Cir. 2009); Curtis v. Chester, 626 F.3d 540, 547 (10th Cir. 2010).  Evidence which alone would not be reliable would be bare out-of-court statements reflecting an adversarial relationship with the accused or statements contained within multiple layers of hearsay.  Lloyd, 566 F.3d at 345.

The second test, the "balancing test," requires the court to weigh the interests of the defendant in cross-examining his accusers against the interests of the prosecution in denying confrontation.  Id. at 344-45.

11

The two tests are overlapping and are not mutually exclusive.  For instance, when applying the balancing test, the reliability of the evidence may, in some circumstances, be so strong as to overwhelm the defendant's interests in confrontation.  Id. at 345.  The Attorney General, on brief, concedes that resort to the balancing test may be appropriate where the reliability of the hearsay is less compelling, but it has been held that, in some circumstances, the balancing test is clearly inappropriate:

> [i]n the balancing process, the defendant's interest in confronting the declarant is entitled to little, if any, weight where the declarant's absence is the result of intimidation by the defendant: Where a defendant has procured the declarant's unavailability 'by chicanery, . . . by threats, . . . or by actual violence or murder,' the defendant is deemed to have 'waived his sixth amendment rights and, a fortiori, his hearsay objection' to the admission of the declarant's statements.

United States v. Williams, 443 F.3d 35, 45 (2d Cir. 2006) (quoting United States v. Mastrangelo, 693 F.2d 269, 272-73 (2d Cir. 1982)).

In those circumstances, the defendant has forfeited any right to confrontation the Constitution may have otherwise afforded him, leaving him no legitimate interests to be balanced against those of the Commonwealth.  We conclude that the court

12

may apply either test, as may be most appropriate in the circumstances.[3]

When a trial court is asked to admit testimonial hearsay evidence in a probation revocation proceeding, the court must make three decisions. First, will the admission of the hearsay testimony violate the probationer's Fourteenth Amendment limited confrontation rights? To answer that question, the court must determine whether the proposed evidence meets the appropriate test as discussed above. That determination can only be made if the content of the proposed evidence is fully disclosed to the court. Such a disclosure may be made by a proffer, by stipulation, or by admitting the evidence conditionally, subject to striking it if it fails to meet the appropriate test. Second, if the trial court decides that such testimony can be admitted, does the testimony, along with other evidence support the conclusion that a condition of the probation was violated? And finally, in light of the violation, should the probation be revoked in whole or in part?[4]

---

[3] The Court of Appeals, en banc, determined that the hearsay testimony of Detective Ortiz satisfied both tests for good cause. Henderson, 59 Va. App. at 656-59, 661, 663, 665, 722 S.E.2d at 283-87.

[4] The second decision, relating to the weight of the evidence, and the third, relating to the appropriate penalty when a violation has been shown, are necessary in all probation revocation proceedings, whether testimonial hearsay is offered or not.

On appellate review, ordinarily, "the determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." Beck v. Commonwealth, 253 Va. 373, 384-85, 484 S.E.2d 898, 905 (1997). However, whether a defendant's due process rights are violated by the admission of evidence is a question of law, to which we apply a de novo standard of review. Volkswagen of Am., Inc. v. Smit, 279 Va. 327, 335, 689 S.E.2d 679, 684 (2010). See United States v. Neeley, 420 Fed. Appx. 228, 231 (4th Cir. 2011) (court applies de novo review in due process challenges to revocation of supervised release); United States v. Perez, 526 F.3d 543, 547 (9th Cir. 2008) (same). Therefore, the application of the abuse of discretion standard of review is inappropriate when considering this due process issue. Rather, while accepting the historical facts, we apply a de novo review to determine whether the admission of the testimonial hearsay meets either the reliability or balancing test as a matter of law.

In reviewing the second question, we apply the well-established standards applicable to review of the sufficiency of the evidence, e.g., Crawford v. Commonwealth, 281 Va. 84, 111-12, 704 S.E.2d 123-24 (2011). We apply the abuse of discretion standard to the third question, Code § 19.2-306(A); Slayton v. Commonwealth, 185 Va. 357, 365, 38 S.E.2d 479, 483 (1946). In

this case, only the first question is before us and accordingly, we will apply a de novo standard of review.

For reasons analogous to those governing appellate review of records of criminal trials, we will view the evidence received at the revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it. See, e.g., Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The evidence was largely circumstantial, but circumstantial evidence is entitled to the same weight as direct testimony. Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation and internal quotation marks omitted).

Applying these principles, we turn to the record of the revocation hearing in the present case. The Commonwealth pointed out to the court that Henderson, who was personally present, was covered "from neck to toe" with tattoos depicting the symbols and insignia of the "Gangsta Disciples," a well-known criminal street gang. Photographs of his upper body were

15

admitted in evidence showing these tattoos and showing him with a group of other men making the gang's hand signal, called "throwing up a pitchfork."[5]  Some of the photographs were taken from Henderson's cellular telephone.  That evidence was circumstantial corroboration of Detective Ortiz' hearsay testimony that the victims and other witnesses were deterred from testifying by intimidation exerted upon them by Henderson through his allies.

Awareness of the dangerous proclivities of criminal street gangs, see, e.g., Rushing v. Commonwealth, 284 Va. 270, 726 S.E.2d 333 (2012); Hamilton v. Commonwealth, 279 Va. 94, 688 S.E.2d 168 (2010), has become a lamentable feature of urban life.  This evidence demonstrated that the witnesses were intimidated by Henderson or his gang to the degree that they had all refused to testify.  All were residents of the same neighborhood and likely aware that Henderson had just been released from eight years' imprisonment for a crime of violence. They were likely motivated by the belief that Henderson had almost immediately resumed his former pattern of criminal behavior, now assisted by his fellow gang members.

_____

[5] Certain characteristics of membership in or association with the Gangsta Disciples street gang, including a description of the gang's hand signal, were discussed in Rushing v. Commonwealth, 284 Va. 270, 275, 726 S.E.2d 333, 336 (2012).

16

Detective Ortiz' hearsay testimony was circumstantially corroborated by evidence emanating from sources other than the statements the victims had made to her. The record also contained Henderson's shifting and highly improbable accounts to explain the use of his telephone to entice the first victim to leave his home. Additionally, the monitored telephone calls made by Henderson and his co-defendants from the jail were implied admissions of their participation in the home-invasion robbery as well as Henderson's actual description, to his mother, of an occurrence at the robbery scene. Further, the record shows the recovery, pursuant to a search warrant, of property stolen in the robbery, from a car in which Henderson admitted that he had been riding with his co-defendants. On the issue of intimidation of the Commonwealth's witnesses, crucial to this appeal, most telling were the direct threats against the victims made by the men in jail in their monitored telephone calls and their efforts, ultimately successful, to recruit agents outside the jail to persuade the victims not to testify.

Most of the hearsay statements contained in the monitored telephone calls were not offered for the truth of the utterances, but rather to prove the state of the declarant's mind as it bore on consciousness of guilt, efforts to conceal participation in crime and desire to avoid detection. These matters fall outside the rule against hearsay, Va. R. Evid.

2:802, or come within its well-recognized exceptions, e.g., Va. R. Evid. 2:803, and thus bear circumstantial guarantees of trustworthiness satisfying the "reliability test."  See, e.g., Jackson, 323 F.3d at 130.  The evidence of witness intimidation was alone sufficient to satisfy the "balancing test."  See Williams, 443 F.3d at 45.  We therefore agree with the Court of Appeals' holding, en banc, that the evidence at the revocation hearing, taken as a whole, was sufficient as a matter of law to satisfy both the reliability and the balancing tests, thereby comporting with the constitutional requirements for admitting the testimonial hearsay evidence and denying Henderson his Fourteenth Amendment confrontation rights for "good cause."

Conclusion

Accordingly, we will affirm the judgment of the Court of Appeals sustaining the trial court's admission of the testimonial hearsay evidence in this probation revocation proceeding.

Affirmed.

SENIOR JUSTICE LACY, with whom CHIEF JUSTICE KINSER and JUSTICE GOODWYN join, concurring.

I concur with the majority's conclusion that a trial court may apply either a reliability test or a balancing test when considering whether hearsay evidence may be admitted in a probation revocation proceeding.  I also agree with the

18

majority's conclusion that the hearsay evidence at issue in this case was admissible.  However, I do not agree with the majority's application of the tests to the circumstances of this case.  Therefore, I would affirm the en banc judgment of the Court of Appeals that the trial court's admission of the hearsay evidence was not improper for the following reasons.

The factual basis for the probation officer's request that Henderson's probation be revoked and his suspended sentence be imposed was based on two events involving Henderson - the attempted robbery of an individual for which a complaint was never filed and Henderson's involvement in and arrest for a home invasion robbery which was ultimately nolle prossed, apparently because the victim was unwilling to testify.

At the revocation proceeding, the Commonwealth's evidence consisted of the testimony of Detective Rosa Ortiz, who investigated the two incidents.  This appeal involves Henderson's objections to that part of Ortiz' testimony relating statements made to Ortiz by the victims of each crime and their relatives.

The majority and all parties agree that a defendant is entitled to due process protection in a probation revocation proceeding, but that the level of protection afforded does not embrace the "full panoply" of protection available in a criminal

19

proceeding.  Morrissey v. Brewer, 408 U.S. 471, 480 (1972).  As relevant here, the due process right to confront and cross-examine witnesses may be limited if the judicial officer conducting the proceeding "specifically finds good cause for not allowing confrontation."[1]  Id. at 489.

Because we conclude that good cause to deny a defendant his due process right of confrontation may be based on compliance with either the reliability test or balancing test, satisfaction of either test is sufficient to sustain the admissibility of the hearsay testimony.

The majority's conclusion that the hearsay testimony may be admitted in this case because it meets the balancing test is based on the theory that the victims' failure to testify at the revocation hearing was the result of intimidation by Henderson "and his allies," "his fellow gang members."  Case law from other jurisdictions has established that when the failure of a witness to testify in a revocation hearing is the result of intimidation by the defendant, the defendant's confrontation

---

[1] As the majority notes, even though the trial court did not make the prerequisite finding of good cause required by Morrissey when limiting the right of confrontation, the en banc Court of Appeals did not address that issue, holding that Henderson did not preserve the issue for appeal.  Henderson, 59 Va. App. at 648 n.4, 722 S.E.2d at 279 n.4.

right is "of little weight" and the balancing test weighs in favor of the Commonwealth, allowing admission of the hearsay evidence of such witness' statements.  United States v. Williams, 443 F.3d 35, 45 (2d Cir. 2006)(quoting United States v. Mastrangelo, 693 F.2d 269, 272-73 (2d Cir. 1982)).

Ortiz' testimony regarding intimidation related to the first victim's reticence to prosecute the attempted robbery and the second victim's refusal to testify in the prosecution of the home invasion robbery.  None of this testimony addressed the victims' reticence to testify in the parole revocation hearing. More importantly, none of the statements referring to the victims' reticence to testify described acts taken by Henderson to keep the victims from testifying.  Similarly, Ortiz' testimony regarding the monitored telephone calls, not challenged by Henderson as hearsay, did not involve any action or statements by Henderson.

The majority's intimidation theory also rests on evidence that Henderson wore tattoos, a factor not mentioned by the Commonwealth until well after the trial court's decision to admit the hearsay evidence, and on the connection of such tattoos to certain gangs, another fact not in evidence.

In my opinion, when applying the balancing test in probation revocation proceedings, acts of intimidation by the

21

defendant or at his or her direction should be firmly established, not merely implied or imputed to the defendant through generalized assumptions.  Reliance on assumptions associated with Henderson's tattoos and various assumptions about the neighborhood and what the victim knew and thought about Henderson's return from prison and reengagement in criminal behavior do not, as a matter of law, outweigh Henderson's due process right of confrontation.  To base a determination that there was intimidation on these assumptions and inferences sets the bar extremely low, allowing trial judges in future probation revocation cases to allow hearsay testimony on the thinnest of reeds.

Admissibility of the hearsay evidence, however, was not error in my opinion because the evidence met the reliability test.  The undisputed fact that the police obtained an arrest warrant for Henderson for the home invasion robbery provides corroboration of that victim's statements that the robbery occurred and that Terrance Henderson was identified as a suspect in the robbery.  While the arrest warrant was not a "detailed police investigative report" it falls within that category of items that support guarantees of the trustworthy nature of the hearsay testimony regarding that victim's statements.  See Crawford v. Jackson, 323 F.3d 123, 130-31 (D.C. Cir. 2003).

Furthermore, the defendant himself told Ortiz that he was in the car where the victim's stolen property was found and that he knew the other persons charged with the alleged robbery. Finally, Ortiz testified that during the monitored telephone calls Henderson stated that during the home invasion robbery, "Danny pulled a knife on Martin, and Danny . . . should go to jail."[2] Henderson's own statement describing elements occurring during the confrontation further corroborated the victim's hearsay statement that the crime occurred and that Henderson was involved.

No independent police investigative report or arrest warrant corroborated the hearsay testimony of the attempted robbery; however, the description of the attempted robbery the victim relayed to Ortiz was very detailed and specific. More importantly, the victim's testimony centered around the telephone calls luring the victim outside on the pretext of going to the courthouse. Henderson admitted to the victim and

_____

[2] I note that the majority asserts that the testimony regarding the monitored phone calls is admissible under the recognized hearsay exception of offering the testimony not for the purpose of the truth but to show state of mind. That exception to the hearsay rule was not argued by the Commonwealth at trial or on appeal. In any event, Henderson is not challenging the admission of this testimony. He challenges only the hearsay testimony of the robbery victims and that testimony does not fall under an exception to the hearsay rule.

to Ortiz that he owned the cellular telephone from which the calls to the victim originated.  Henderson's conflicting explanations that he had loaned the cellular telephone to another unknown person, and alternatively that the telephone had been stolen, did not diminish the fact that he admitted that he owned the telephone that was used to lure the victim outside where the attempted robbery occurred.

Accordingly, I conclude that the victims' hearsay testimony met the requisite guarantees of trustworthiness such that its admission did not violate Henderson's due process right of confrontation.