COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Lorish

JAMAL BRION WALKER

v.     Record No. 1297-21-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
OCTOBER 4, 2022

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; Leanna C. Minix, Assistant
Attorney General, on brief), for appellee.

Following his guilty pleas, the trial court convicted Jamal Brion Walker of malicious

wounding and use of a firearm in the commission of a felony; it sentenced him to a total of

twenty-three years' incarceration with fifteen years suspended. On appeal, Walker challenges the

voluntariness of his guilty pleas and argues that the sentence the trial court imposed represents an

abuse of its sentencing discretion. After examining the briefs and record in this case, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit."

Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Before accepting Walker's pleas, the trial court conducted a colloquy with him to ensure they were entered freely and voluntarily. During the colloquy, Walker stated that he did not have "any mental condition that would impair [his] ability to understand the[] proceedings" and had not consumed any alcohol, drugs, or prescription medication in the preceding twelve hours. Walker confirmed that he had discussed the charges with his attorney and "fully understood" their "elements." He had decided for himself to plead guilty because he was "in fact guilty" of the charges. Walker understood that by pleading guilty he was waiving his rights to a trial by jury, to confront the witnesses against him, to present evidence in his defense, and to appeal certain decisions of the court. Walker confirmed that he was pleading guilty "freely and voluntarily" and nobody had "forced" him to enter his pleas. Walker understood that the use of a firearm charge carried a three-year mandatory minimum term of incarceration and that the court could sentence him to a maximum of twenty years' incarceration on the malicious wounding charge. He also understood that the trial court was not bound by the discretionary sentencing guidelines. Walker declined the opportunity to ask the trial court any questions.

The Commonwealth proffered that on January 19, 2020, Newport News police officers drove to a restaurant where they encountered two males, Leroy and Mario Hicks, who had sustained "multiple gunshot wounds." After viewing surveillance video, the officers identified Walker as the shooter and arrested him. Walker told the officers that he had been inside the restaurant when a "fight broke out" and Leroy choked him. Walker admitted that he left the restaurant, waited in the parking lot, and shot at Leroy and Mario as they departed. Leroy suffered gunshot wounds to his arm, leg, and hip; Mario suffered gunshot wounds to his foot and

- 2 -

knee. Police found nine cartridge casings scattered in the parking lot and three bullet fragments near the restaurant's entrance.

The trial court accepted Walker's pleas, finding they were entered freely and voluntarily with an understanding of their nature and consequences. Based on the pleas and proffered evidence, the court convicted Walker of malicious wounding and use of a firearm in the commission of a felony and continued the matter for sentencing.[1]

At the sentencing hearing, Walker introduced into evidence a letter from his mother, who characterized him as a "respectful" and "caring individual who loves his family" and "adores his two children." She wrote that Walker had a "great" work ethic and often helped neighbors. She asserted that Walker had a job available when he was released from incarceration and was "a decent person who just made some poor decisions."

Walker argued that the trial court should sentence him to three years' incarceration. Stressing his lack of criminal history and family support, Walker maintained that he did not need a "stiff sentence" to be rehabilitated. He acknowledged that his offenses were serious but also characterized them as a "hiccup in the road for him." He asked the trial court "to take a chance" on him and show mercy.

The Commonwealth argued that the court should impose a sentence above the high end of the discretionary sentencing guidelines.[2] The Commonwealth contended that Walker's "calculated" decision to wait in the parking lot and shoot at a restaurant that was filled with people demonstrated

---

[1] In exchange for his pleas, the Commonwealth moved to *nolle prosequi* additional charges of malicious wounding, use of a firearm in the commission of a felony, and maliciously shooting into an occupied building.

[2] The discretionary sentencing guidelines recommended a total sentence between three years' incarceration, which reflected the mandatory minimum, and four years and eleven months' incarceration, with a midpoint of three years and four months.

an "utter disregard for human life." The Commonwealth emphasized that Walker shot "multiple times" and inflicted numerous gunshot wounds on both his victims.

In allocution, Walker apologized to the victims and their families. He claimed that he was young, did not intend to cause harm, and had "grown" and "learned" from his mistakes. He lamented losing "family time" while incarcerated and missing important milestones in his children's lives. He recounted that his sibling had died while he was incarcerated and his cousin was struggling with lupus. Accordingly, he asked the court "for another chance at life."

The trial court found that Walker's actions were "extremely dangerous" to both his victims and the other restaurant patrons who "had to be terrified." The court found that the discretionary guidelines were "too low" and "shock[ed] the conscience." Accordingly, the court imposed three years' incarceration on the use of a firearm conviction and twenty years' incarceration with fifteen suspended on the malicious wounding conviction. Walker asked the trial court to order that his sentences be served concurrently; the court denied his request. Walker appeals.

ANALYSIS

A. Guilty Pleas

Walker argues that the trial court erred by accepting his guilty pleas because he did not enter them freely and voluntarily. He argues that "the record failed to establish" that he "was given notice of the elements of the offense[s]" or "what the Commonwealth must prove before he could be" convicted. He also argues that he was not "made aware of the various collateral consequences of his guilty pleas," including the loss of his rights to vote and possess a firearm and disqualification of certain public benefits and occupational licenses. Relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010), Walker suggests that the failure to advise him of those collateral consequences rendered his pleas invalid. Finally, Walker argues that his pleas were not voluntary because the trial court "failed to establish for the record that [he] possessed the requisite mental competency to knowingly enter

his pleas . . . or otherwise exclude the possibility that [he] was suffering from diminished capacity." Walker acknowledges that he did not move to withdraw his guilty pleas or otherwise preserve his argument for appellate review but asks that we address it under the "good cause" and "ends of justice" exceptions to Rule 5A:18.[3]

"'Good cause' relates to the reason why an objection was not stated at the time of the ruling." *Pope v. Commonwealth*, 60 Va. App. 486, 508 (2012) (quoting *Campbell v. Commonwealth*, 14 Va. App. 988, 996 (1992) (*en banc*)). "The Court may only invoke the 'good cause' exception where an appellant did not have the *opportunity* to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (emphasis added) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

The trial court accepted Walker's guilty pleas on September 1, 2021, and entered final judgment on December 6, 2021. Thus, Walker had nearly four months to move to withdraw his guilty pleas but failed to do so. Code § 19.2-296 (providing that a trial court, "to correct manifest injustice, . . . within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea"). Nothing in the record suggests that anything prevented Walker from filing such a motion. Accordingly, the good cause exception does not apply because there was ample opportunity for Walker to alert the trial court of the relief he sought. Moreover, there were valid strategic reasons for not doing so considering the charges the Commonwealth moved to *nolle prosequi* because of Walker's pleas. Combined, those charges presented a potential sentencing exposure of an additional thirty-five years. Code §§ 18.2-10, 18.2-51, 18.2-53.1, 18.2-279.

---

[3] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (*en banc*) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Melick*, 69 Va. App. at 146 (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). Furthermore, to demonstrate that a miscarriage of justice has occurred, "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)).

A defendant who enters a guilty plea waives several rights, so a "plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Thus, to withstand scrutiny on appeal, the record must contain "an affirmative showing that [the guilty plea] was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

The record demonstrates that the trial court conducted a thorough colloquy with Walker, in which he confirmed that he had discussed the charges and their elements with his attorney. *See Hill v. Commonwealth*, 47 Va. App. 667, 675 (2006) (rejecting a defendant's challenge on

direct appeal to the voluntariness of his conditional guilty plea because his statements during the plea colloquy demonstrated that his plea "was made voluntarily, knowing, and intelligently" (quoting *Boykin*, 395 U.S. at 242)).[4]  Walker stated he understood "the elements the Commonwealth must prove" before he could be found guilty.  He further understood the penalties each charge carried, including the three-year mandatory minimum term of incarceration for the firearm offense.  In addition, Walker knew that he was waiving several important trial rights, including the rights to a jury trial, silence, confrontation, to present evidence in his defense, and to appeal certain decisions of the court.  Walker also confirmed that no one had made any threats or promises other than the *nolle prossed* charges, to induce his guilty pleas.  Thus, the record contains "an affirmative showing" that Walker's guilty pleas were "intelligent and voluntary."  *Boykin*, 395 U.S. at 242.

No authority requires that the trial court review each of the specific elements of the offenses for Walker's guilty pleas to be valid, and we are unpersuaded by his contrary argument.  "A circuit court shall not accept a plea of guilty . . . without first determining that the plea is made . . . with an understanding of *the nature* of the charge and the consequences of the plea."  Rule 3A:8(b)(1) (emphasis added); *see also* Rule 7C:6; *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (holding that a defendant must receive "real notice of the true *nature* of the charge against him" for a plea to be voluntary (emphasis added) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941))).  Here, Walker affirmatively represented that he had discussed the charges and their elements with his attorney and understood their respective penalties.  After that discussion, Walker decided to plead guilty because he was "in fact guilty."  Walker also understood the important trial

---

[4] Although relying on "admissions made by a defendant in a guilty plea and the attendant colloquy . . . is misplaced in the context of a Code § 19.2-296 *motion to withdraw a guilty plea*," Walker did not move to withdraw his pleas in this case.  *Hubbard v. Commonwealth*, 60 Va. App. 200, 208 (2012) (alteration in original) (emphasis added) (quoting *Bottoms v. Commonwealth*, 281 Va. 23, 33 (2011)).

rights he was giving up.  Thus, he was aware of the nature of the charges and the consequences of his pleas.

Walker also argues that his guilty pleas were not knowing and voluntary because the record does not demonstrate that he was advised of various "collateral consequences" of his pleas.  This argument lacks merit.  "For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, but not the collateral, consequences of his plea."  *Brown v. Commonwealth*, 297 Va. 295, 302 (2019) (quoting *Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007)).  Indeed, a "trial court is not required to discuss every nuance of the law regarding a defendant's plea in order to render a guilty plea voluntary and knowing."  *Zigta v. Commonwealth*, 38 Va. App. 149, 154 (2002).  Moreover, Walker's reliance on *Padilla* is misplaced.  *Padilla* addressed a claim that the trial attorney was ineffective for failing to advise his client that he would be subject to deportation.  559 U.S. at 359.  Even assuming *Padilla* could be relevant to the voluntary nature of certain guilty pleas, Walker has not presented any evidence or argument suggesting that he would be subject to deportation.

Finally, Walker argues that his pleas were not voluntary because the trial court "failed to establish for the record that [he] possessed the requisite mental competency to knowingly enter his pleas . . . or otherwise exclude the possibility that [he] was suffering from diminished capacity."  To prevail on a claim that a trial judge should have conducted a competency hearing *sua sponte*, appellant "must establish that the . . . trial court ignored facts raising a 'bona fide doubt' regarding [his] competency to stand trial."  *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000).  The Fourth Circuit has recognized that counsel's decision not to raise the issue of his client's competence is probative of competency.  *Id.* at 192-93.  The record in this case contains nothing suggesting an issue with Walker's "mental competence" or "capacity."  Rather, during the colloquy, Walker affirmed that he did not have "any mental condition that would impair [his]

ability to understand the[] proceedings" and had not consumed any alcohol, drugs, or prescription medication in the previous twelve hours. Thus, "the evidence in the record overwhelmingly suggests that there was never a bona fide doubt" about Walker's competency to stand trial. *Id.* at 194.

Accordingly, we conclude that the record contains an affirmative showing that Walker's guilty pleas were entered knowingly, voluntarily, and intelligently. *Boykin*, 395 U.S. at 242. Thus, no manifest injustice will result by applying Rule 5A:18.

### B. Sentence

Walker argues that the trial court abused its discretion by imposing an arbitrary and "disproportionate" sentence instead of imposing a sentence "close to the midpoint" of the sentencing guidelines and by failing to "run" his sentences concurrently. He maintains that the trial court did not give sufficient weight to his mitigating evidence, including his youth, employment, remorse, and lack of criminal history or substance abuse. He emphasizes his mother's letter and asserts that he accepted responsibility for the offenses by pleading guilty. Thus, he concludes that the trial court abused its discretion by resorting to "unduly harsh," "non-constructive," and "long term" imprisonment.

"The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). Accordingly, a judge's failure to follow the sentencing guidelines is "not . . . reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F). Additionally, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 654 (2011). "It lies within the province of the legislature to define and classify crimes and to determine the punishments for those crimes." *DePriest v. Commonwealth*, 33 Va. App. 754, 764 (2000).

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Here, Walker's sentence was within the sentencing ranges set by the legislature. *See* Code §§ 18.2-10, 18.2-51, 18.2-53.1; *Graves v. Commonwealth*, 294 Va. 196, 208 (2017) (holding that Code § 18.2-53.1 imposes "a fixed three-year term of confinement" for a first offense that is "both the mandatory minimum and the mandatory maximum").

In addition, although trial courts generally have the discretion "to run sentences concurrently," the General Assembly may "proscribe[]" that authority by directing "that sentences for certain crimes may not be run concurrently." *Brown v. Commonwealth*, 284 Va. 538, 542 (2012). Relevant here, any person convicted of using a firearm in the commission of a felony "shall be sentenced to a mandatory minimum term of imprisonment of three years for a first conviction . . . . Such punishment shall be separate and apart from, and shall be made to run *consecutively* with, any punishment received for the commission of the primary felony." Code § 18.2-53.1 (emphasis added). Thus, Walker's argument to the contrary notwithstanding, the trial court did not have the discretion to order Walker's three-year mandatory minimum sentence for use of a firearm in the commission of a felony to "run" concurrently with his malicious wounding sentence. *See Brown*, 284 Va. at 543 (holding that the "mandatory minimum term" under Code § 18.2-53.1 "must be made to run consecutively with any punishment received for the primary felony").

Finally, it was within the trial court's purview to weigh Walker's mitigating evidence. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case— those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* The record affirmatively demonstrates that the trial court considered the mitigating evidence Walker cites on appeal. Balanced against those circumstances, however, was Walker's calculated conduct. The undisputed proffer established that Walker waited in the parking lot and fired nine shots at Leroy and Mario. Walker inflicted multiple gunshot wounds to both victims and endangered the lives of every patron inside the restaurant. The trial court found that Walker's actions were an aggravating factor because they were "extremely dangerous." After considering all the circumstances, the trial court imposed the sentence that it deemed appropriate. Walker's "sentence was within the statutory range, and our task is complete." *Thomason*, 69 Va. App. at 98.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed*.

Athey, J., concurring.

Although I agree with the majority that Walker did not properly preserve his guilty plea argument, I believe he also did not preserve his substantive sentencing challenge because Rule 5A:18 requires a defendant seeking to preserve an issue for appeal to object "with reasonable certainty."

Because "neither the Code nor Rule 5A:18 is complied with merely by objecting generally to an order," *Lee v. Lee*, 12 Va. App. 512, 515 (1991) (*en banc*), the defendant must specify the legal theory on which the objection is based, *Maxwell v. Commonwealth*, 287 Va. 258, 268 (2014). For instance, a Confrontation Clause objection does not preserve a due process challenge to the same evidence. *Cox v. Commonwealth*, 65 Va. App. 506 (2015); *see also Henderson v. Commonwealth*, 59 Va. App. 641, 665 n.5 (2012) (*en banc*); *Roseborough v. Commonwealth*, 55 Va. App. 653, 668-69 (2010), *overruled on other grounds*, 281 Va. 233 (2011). Even raising a subdivision of that theory does not preserve another, distinct sub-theory. *Shapiro v. City of Va. Beach*, No. 0383-09-1, 2010 WL 2265034 (Va. Ct. App. June 8, 2010) (holding that a facial constitutional challenge does not preserve an as-applied challenge).[5]

The same principles apply to sentencings and probation hearings. *See Walton v. Commonwealth*, 24 Va. App. 757, 761 (1997); *Alston v. Commonwealth*, 49 Va. App. 115, 122 (2006); *Henderson*, 59 Va. App. at 665 n.5. Specifically, the Virginia Supreme Court has held that arguing for a different sentencing arrangement than the one ultimately imposed is not the

---

[5] These principles apply regardless of the precise nature of the legal theories at issue. *See Alston v. Commonwealth*, 49 Va. App. 115, 122 (2006) (Sixth Amendment and due process); *Cox*, 65 Va. App. 506 (hearsay and the Confrontation Clause); *Henderson*, 59 Va. App. at 665 n.5 (good cause to admit hearsay at a probation hearing and the requirement that the court state the good cause on the record); *Roseborough*, 55 Va. App. at 668-69 (two interpretations of the same statute, one of which does not render evidence admissible and one which renders the same evidence inadmissible). Likewise, these principles should apply regardless of the precise manner in which the defendant sought a lesser sentence than was ultimately imposed.

- 12 -

same as timely and specifically objecting to the sentencing decision, with the result that sentencing arguments not accompanied by a specific objection to the sentence actually imposed are not preserved for appeal. *Williams v. Commonwealth*, 294 Va. 25, 26-27 (2017); *see also Singson v. Commonwealth*, 46 Va. App. 724, 748 (2005).

A defendant challenging a sentence that falls within the statutory limits can raise only one legal rule as a basis for reversal: the requirement that trial courts not abuse their discretion. Trial courts' discretion to make certain decisions is constrained by legal rules and by the boundaries that circumscribe sound judgment. Hence, a trial court can abuse its discretion, or make an unreasonable judgment, in any of three ways: making a factual finding that is plainly wrong or unsupported by the evidence, allowing an error of law to affect its decision, or improperly weighing the factors that are relevant to its determination. *Owens v. Owens*, 41 Va. App. 844, 853 (2003) (citations omitted); *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (citations omitted); *Dang v. Commonwealth*, 287 Va. 132, 146 (2014) (citations omitted).

A defendant can therefore preserve an abuse of discretion challenge to a sentencing decision in any of three ways. First, as in motions to strike, the defendant can preserve a factual challenge by arguing that no evidence supports one of the trial court's adverse factual findings on a matter relevant to the sentencing decision, such as a finding that the defendant was not sincerely remorseful. Second, the defendant can preserve a legal challenge by taking a position on a point of applicable law with which the trial court disagrees. Third, the defendant can preserve a factor-weighing challenge by arguing that the sentence the trial court ultimately imposed was excessive.

The third type of challenge is the most difficult to properly preserve. Arguing that a trial court should impose a sentence of a particular length or within a particular range is not the same as arguing that the longer sentence the trial court "actually imposed" was an abuse of discretion.

- 13 -

Straying outside the bounds of a reasonable judgment is not the same as not making the best sentencing decision or not making the right sentencing decision. Saying that a defendant deserves a second chance because of his or her attempts at rehabilitation is not the same as saying that no reasonable jurist would deny the defendant a second chance.[6]

Therefore, under *Williams*, Rule 5A:18 is not satisfied when a defendant merely argues for a lesser sentence than the one the trial court ultimately imposed.[7] Instead, the defendant must be more specific. The phrase "abuse of discretion" is not strictly necessary if the defendant mentions one of the three major ways a trial court can abuse its discretion (unsupported factual finding, legal error, or improper weighing of factors). To challenge the trial court's weighing of the factors, the defendant must say so or that the decision constituted an abuse of discretion, was an unreasonable decision, or resulted in an excessive sentence.

Here, Mr. Johnson, Walker's attorney, asked the trial court to "take a chance on this young man." He asked for an active sentence of no more than three years and the rest of the sentence to be suspended because this was a "hiccup" for a young man who was otherwise on the right track. His mother wrote a letter commending him for his good qualities and asking for

---

[6] Interpreting an argument for a particular sentence as an implicit argument that a harsher sentence is unreasonable is plausible only when the requested sentence and the actual sentence are wildly disparate, which creates immense line-drawing problems. More importantly, arguing for one sentence is not the same as arguing that a harsher sentence is unreasonable.

[7] A key difference between the substantive legal rules governing Virginia sentencing and federal sentencing makes it easier to preserve a substantive sentencing challenge in federal court. Because federal law requires federal judges to craft the most lenient sentence necessary "to comply with (among other things) certain basic objectives, including the need for just punishment, deterrence, protection of the public, and rehabilitation," a criminal defendant in federal court can preserve a substantive sentencing challenge merely by requesting a lesser sentence than the one actually received. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (citation and internal quotation marks omitted). But Virginia law grants judges the discretion to make any choice that falls at or below the statutory maximum and meets all other applicable statutory requirements so long as it is unaffected by a legal error or an unsupported factual finding. *Fazili v. Commonwealth*, 71 Va. App. 239, 248 (2019) (citation omitted).

leniency, and the letter was introduced at the sentencing hearing.  None of this amounted to anything more than a plea for a lesser sentence than the one the trial court "actually imposed."

Therefore, I do not believe that the defendant properly preserved the substantive sentencing challenge he raises on appeal.